## Means *v*. Terral.

### Opinion delivered October 25, 1920.

1. Judges—vacancy in office of circuit judge.—When a vacancy occurs in the office of circuit judge by the death of the incumbent, and the Governor makes an appointment to fill the vacancy, it is immaterial whether the appointment is made under Kirby's Dig., § 7991, to fill a vacancy occurring more than nine months before the next general election, or under Const., art. 7,

§ 50, to fill a vacancy occurring within nine months of a general election where the term extends beyond the next general election; in either case the appointment is only temporary, and not for the unexpired term, so that at the next general election after such appointment a circuit judge should be elected, whether the Governor issues a proclamation to that effect or not.

2. JUDGES—VACANCY IN OFFICE—MANDAMUS.—Where a vacancy has occurred in the office of circuit judge, and the Governor has filled the office by a temporary appointment, but has failed to call a special election, as required by art. 7, § 50, of the Constitution, one who has received the nomination for the office and is qualified is entitled to have his nomination certified by the Secretary of State, and on the latter's refusal to certify same a writ of mandamus will be ordered.

Appeal from Pulaski Circuit Court, Second Division; *Guy Fulk,* Judge; reversed.

*Reid, Burrow & McDonnell,* for petitioner.

Notwithstanding the failure of the Governor to call a special election, the commission issued to the present incumbent expires upon the election of a judge at the approaching general election to fill the unexpired term. Const. 1874, art. 7, § 50. General elections are more in keeping with our system of government than special elections and in the event a general election occurs before the calling of a special election the necessity of the latter is obviated. 15 Ark. 664.

*John D. Arbuckle,* Attorney General, *Silas W. Rogers,* Assistant, and *Mehaffy, Donham & Mehaffy,* for respondent.

1. The vacancy can only be filled at a special election called by the Governor to elect a judge to fill the unexpired term.

Terms of elective officers created by the Constitution begin on the day the result of the election was officially declared, October 31, 1874, and the terms end in regular cycles of the periods enumerated by the Constitution as the duration of the respective terms. 48 Ark. 82; 112 *Id.* 291; 116 *Id.* 36; art. 7, § 50, Const. 1874. Here the vacancy occurred more than nine months before the next

succeeding general election, and the vacancy should be filled by a special election.

2. This case should be affirmed, because (1) the Constitution provides a fixed and uniform day of expiration of office of circuit judge. 102 Ark. 12. And (2) the Constitution is silent, and the statute gives the Governor authority to fill temporary vacancies in the office of circuit judge. A judge so appointed is a *de jure* as well as *de facto* officer. (3) The Constitution has provided that where a vacancy occurs, as here, it shall be filled by special election, but the Governor has failed to call such special election. Art. 7, § 50. (4) The regular biennial election in November next is not a special election, and such an election as is contemplated by art. 7, § 50; and (5) there being no election called to fill the office of circuit judge in the case before the court, and no notice having been given that a special election is to be held to fill the unexpired term of John C. Ross, and the office being filled by an incumbent *de facto* and *de jure* officer, no vacancy exists, and the Secretary of State is not warranted to certify the name of H. B. Means as a candidate to be voted for at the general election to be held in November next.

McCULLOCH, C. J. A vacancy occurred in the office of Judge of the Seventh Judicial Circuit by the death of the incumbent in June, 1919, and the Governor made a temporary appointment to fill the vacancy, pursuant to the authority conferred on him by statute. Kirby's Digest, § 7991. The Governor has not called a special election as provided in the Constitution (article 8, section 50) and the question presented in the present case is whether or not an election to fill the vacancy for the unexpired term can be held at the approaching biennial general election on November 2, 1920, without a proclamation by the executive calling for an election on that date to fill such vacancy.

Appellant, H. B. Means, a regular practicing attorney of the bar of that court, has tendered to the Secre-

tary of State a certificate of his nomination for the office in conformity with the election laws of the State, and, on the refusal of that officer to accept the certificate and to certify the nomination to the county election board, Mr. Means brought this action to compel the Secretary of State, by mandamus, to do so.

Circuit judges are elected for terms of four years, and the regular terms of all the circuit judges in the State run contemporaneously and end at the same time. *State* v. *Askew*, 48 Ark. 82; *State ex rel.* v. *Cotham*, 116 Ark. 36.

The section of the Constitution referred to above appears in the article on the Judicial Department and reads as follows:

"All vacancies occuring in any office provided for in this article shall be filled by special election save that in case of vacancies occurring in county and township offices six months and in other offices nine months, before the next general election, such vacancy shall be filled by appointment by the Governor."

The contention of counsel for appellant is that, notwithstanding the failure of the Governor to call a special election as required by the Constitution, the commission issued to the present incumbent expires upon the election of a judge at the approaching general election to fill the unexpired term. On the other hand, the contention of the Attorney General, who appears for the Secretary of State, is that the vacancy can only be filled at a special election called by the Governor to elect a judge to fill the unexpired term. These respective contentions call for an interpretation of section 50, article 7, of the Constitution.

It will be observed that the Constitution does not affirmatively confer power on the Governor to make an appointment at all, unless the vacancy occurs within a specified time before the next general election—that is to say, in case of vacancies occurring in county and township offices, six months and in other offices nine months

before a general election. It is only on account of the
silence of the Constitution that the Legislature is em-
powered to confer authority upon the Governor to make
a temporary appointment to fill a vacancy until a spe-
cial election could be held. *Cobb* v. *Hammock,* 82 Ark.
584; *State ex rel.* v. *Stevenson,* 89 Ark. 31. In either
event, whether the appointment be made under the stat-
utory authority where the vacancy occurs more than nine
months before the next general election, or be made under
the constitutional authority where the vacancy occurs
within nine months before a general election and the term
extends beyond the next election, the appointment is only
temporary and not for the unexpired term. This is nec-
essarily implied from the language of that section of the
Constitution. It was clearly the policy of the framers
of our Constitution to provide for the filling of vacancies
in office by election and not by appointment, as was said
by Chief Justice HILL, speaking for this court in the case
of *State ex rel.* v. *Stevenson, supra:* "It was evidently
the intention of the framers of the Constitution of 1874
that the appointing power should be limited. Its policy
was to fill vacancies by election."

An election by the people to fill a vacancy, whether
at a special election or at the succeeding general election,
is for the unexpired term, but, as before stated, any ap-
pointment made by the Governor is, under the Consti-
tution, temporary. We have just said that an appoint-
ment by the Governor within nine months before the
next general election expires on the filling of the vacancy
for the unexpired term at the next election. The words,
"next general election," could not reasonably be con-
strued to mean the general election at the expiration of
the term, for, if we put that construction on the language,
there would be no power conferred by this section of the
Constitution for the Governor to make an appointment,
unless the vacancy occurred within nine months before
the expiration of the term. It is clear therefore that the
framers of the Constitution, pursuant to the policy of

having biennial general elections so that all vacancies should be filled by election, did not intend to confer any express authority upon the Governor to make an appointment, except where the vacancy occurred within nine months before the next general election, meaning the next election succeeding the occurrence of the vacancy, and that the commission issued under that appointment should expire at that election. If, therefore, the vacancy in this instance had occurred within nine months before the next general election, the calling of a special election would have been unnecessary, and the people would, by operation of law, be called on to fill the vacancy for the unexpired term at this election.

Viewing the constitutional provision in that light and as bearing that meaning, it is inconceivable that the framers of the Constitution intended to permit the Governor to exercise a greater power because of the silence of the Constitution with reference to a temporary appointment when a vacancy occurs more than nine months before a general election, than under the express provision which empowers him to make an appointment where a vancancy occurs within nine months of the election.

The dominant thought in this provision of the Constitution is that vacancies in office are to be filled for the unexpired term by election, and that only a temporary appointment by the Governor is authorized or permitted. The reference to special elections is solely for the purpose of conferring authority and giving directions for a special election and not to prescribe a limitation upon the method of filling vacancies for the unexpired term, and it is a direct command that it shall be done by that method for the purpose of expedition. In other words, the provision about special elections was intended to obviate delay until the regular election in filling the vacancy, and to accelerate it by having a special election at an earlier date, and the fact that the executive failed to obey the mandate of the Constitution with respect to calling a special election does not enlarge his power over

the subject so as to permit him to prolong the temporary incumbency of his appointee beyond the time fixed by law for holding a general election in the State.

It is clear, not only from this provision of the Constitution, but also when considered in connection with other provisions of the Constitution on like subjects, that it was intended that the people should have an opportunity at the regular biennial election to fill vacancies in offices which had not been theretofore filled by special election. For instance, in article 6, which deals with the Executive Department, there is a section (23) which reads as follows: "When any office from any cause may become vacant, and no mode is provided by the Constitution and laws for filling such vacancy, the Governor shall have the power to fill the same by granting a commission which shall expire when the person elected to fill said office, at the next general election, shall be duly qualified."

It is unnecessary for us to determine under what circumstances the section just quoted would apply, but its language shows that its framers had in mind that all commissions issued by the Governor should expire not later than the next general election. This provision is in conformity with the one with which we are dealing in this opinion in fixing the next general election as the limit of time for the incumbency of the office under appointment from the Governor. The statutory provision (Kirby's Digest, section 7991) with reference to conferring upon the Governor the power to make an *ad interim* appointment where the vacancy occurs more than nine months before the next general election, was an act of the General Assembly of 1877, which was less than three years after the adoption of the Constitution in 1874, and that statute provides that the commissions issued by the Governor shall expire "when the person elected to fill such office at such special election shall be duly qualified." There is certainly no reason to believe that the framers of the statute, which was enacted so soon after

the adoption of the Constitution, meant to limit the commission to a special election, and yet contemplated that appointments under it might continue beyond the next general election by reason of the failure of the Governor to call a special election.

Our election laws afford the machinery and a comprehensive scheme for the filling of all offices at the general elections, and the law fixing the time for the election gives full notice and authority to the electors. The Constitution itself, under the interpretation we give it, makes the general election the time for filling vacancies not theretofore filled by special election. A proclamation or notice of such an election is not essential to its validity, and the election can not be defeated by the failure of any official to give notice by proclamation. Mechem on Public Offices, sections 173-174.

The decision of the Supreme Court of Oregon in the case of *State* v. *Johns*, 3 Wilson (Oregon) 533, is instructive, and sustains the views we have expressed. In that case the only distinction was that the Constitution contained the provision that a vacancy filled by appointment of the Governor "shall expire when his successor shall have been elected and qualified." This is not a material distinction, for such is clearly the meaning of our Constitution, which contains substantially the same provision, and provides that all officers shall continue in office until their successors are elected and qualified. The converse of it necessarily is that the right to hold shall cease when the successors are elected and qualified. The Oregon court in the case just referred to held that the Governor had the right to make a temporary appointment to fill a vacancy, but that the appointment did not extend beyond the general election following it. In disposing of the matter the court said:

"The persons so appointed merely hold office temporarily, so that public business may not be retarded or disturbed by the death or resignation of the elected incumbent. As to the appointive power of the Governor,

it appears from the Constitution and from our system of government, that it was the manifest intention of the framers and founders thereof to restrict the same within the narrowest limits.   *   *   *   To hold that the power of the Governor is so great that he can prevent the people from selecting their officers at any time, when in so doing the fundamental law is not infringed, would be contrary to the spirit of our form of government. * * * The people of Oregon by their Constitution made their judiciary elective, and only gave the executive power to fill temporary vacancies, which should occur between elections. If the people had intended to part with this power of appointing county judges, they would have expressed it. It can not be inferred. No inference or intendment is ever presumed against the sovereign. Such is the universal rule for the construction of statutes, for they emanate from the sovereign power which, in this State, is the people. They appoint the executive, and he only acts by delegated authority, and this authority can not be presumed beyond the express words of the grant. And I think the power in this case only extends to the filling a vacancy until the next general election, when the people can regularly exercise their authority in electing officers.''

The Supreme Court of Nevada in the case of *Sawyer* v. *Haydon,* 1 Nevada 75, held that there was no inherent right in the people to fill a vacancy in an office for the unexpired term merely because the office was an elective one, where there was no express provision for such election by the people to fill the vacancy. The distinction here is that our Constitution expressly reserves to the people the right to fill vacancies for unexpired terms and by necessary implication a temporary appointment made by the Governor does not run beyond the next general election. The power to make appointments to office emanates primarily from the people, either by express provision conferring the authority or by implication. On the other hand, the people may reserve power by express provision or by necessary implication,

and we are of the opinion that under a fair and reasonable interpretation of the Constitution the people have so reserved their right to fill all vacancies at a general election, when a term has expired or when there is a vacancy to be filled for an unexpired term.  Any other view of the law would enable the executive to bid defiance to the mandate of the Constitution and prevent the people from exercising at·all their right of filling vacancies by election.

There is nothing in the language of the court in the case of *Cobb* v. *Hammock, supra,* which is against the views here expressed.  The point in that case was whether or not the Governor had power to make an *ad interim* appointment where the vacancy occurred more than the specified time before the next general election. We spoke of it being a case where the vacancy was to be filled by special election, but that language does not imply and does not carry the meaning that a vacancy can not be filled except at a special election.

Appellant shows himself to be qualified as a candidate for said office, and that he tendered his certificate of nomination to the Secretary of State.  He is therefore entitled to be certified as such candidate.  The judgment of the circuit court is therefore reversed, and judgment will be entered here in favor of appellant in accordance with the prayer of his complaint.

WOOD and SMITH, JJ., dissent.

HART, J. (concurring).  It must be admitted by all that it is the duty of courts to ascertain the will of the framers of the Constitution from the language used, and, having ascertained it, to give it effect.  I also think that an election can only be held by virtue of some constitutional provision or legal enactment, either expressly or by direct implication authorizing that election.

The correctness of the majority opinion depends wholly upon the construction to be given to section 50 of article 7 of our Constitution relating to judicial department.  The section reads as follows:

"All vacancies occurring in any office provided for in this article shall be filled by special election, save that in case of vacancies occurring in county and township offices six months, and in other offices nine months, before the next general election; such vacancies shall be filled by appointment by the Governor."

Here lies the source of power. The concluding part of the section provides that in case of vacancies in other than county and township offices occurring in nine months before the next general election such vacancies shall be filled by appointment by the Governor.

The courts of other States are in conflict as to the meaning of the phrase "next general election," or similar expressions used in the Constitution and statutes providing for the filling of vacancies in public offices. See case note to *Wendorff* v. *Dill* (Kan.), 50 L. R. A. (N. S.) 359. We need not give this any concern, for both our Constitution and statute have defined the words. Article 3, section 8 of the Constitution provides that the general elections shall be held biennially on a fixed date until changed by statute. The Legislature, which convened in January, 1875, immediately after the adoption of the Constitution, provided for holding elections biennially on the date fixed in the Constitution and called them general elections. Besides this the expression had long been used in this State to denote the elections which were held every two years for the election of State and county officers. Thus we see that the term "general election" has both a constitutional and statutory definition, and that this meaning was generally understood at the time the Constitution was adopted.

There is nothing to indicate that the framers of the Constitution used the words in other than their natural and accustomed meaning. Hence I think that the words, "next general election," as used in the section, mean the general election next in point of time after the vacancy occurs. To illustrate, the term of a circuit judge is four years, and if a vacancy should occur during the first two years of his term and within nine months of the next or

succeeding general election, it would be the duty of the Governor to appoint. The appointment, however, would not run to the end of the term, which would be over two years, but by the plain intendment of the section of the Constitution it would only run to the next general election, or the general election next in point of time after the vacancy occurs, at which time, by the plain intendment of the Constitution, the people would have the right and it would be their duty to elect a judge for the remainder of the term. Thus would be carried out the policy of unity in terms of circuit judges so that they all expire at the same time. To continue the illustration, if a circuit judge should die during the first two years of his office more than nine months before the general election next in point of time, the Governor, under the decision in *Cobb* v. *Hammock,* 82 Ark. 584, could make a temporary or provisional appointment to last until he could call a special election to fill the vacancy; but in no event could that appointment last longer than the next general election or the general election next in point of time, at which time the people by plain intendment or necessary implication reserved to themselves the right to fill the vacancy by election.

It is admitted that where the vacancy does not occur within the nine months first referred to the temporary or provisional appointment should only last until a special election could be called by the Governor and held to fill the vacancy. Such construction results, not from any express words of the section of the Constitution, but from necessary implication from what is expressed. With equal force it may be said that the plain intendment is that the Governor could not extend the time of his temporary appointment by failure to call a special election longer than the next general election. In short, if the Governor's appointment under the concluding part of the section only lasts until the next general election, at which time the people have reserved to themselves the right to fill the vacancy, why should the temporary provisional appointment made by the Governor, as

above pointed out, last beyond the next general election because the Governor failed to discharge his duty by calling a special election to fill the vacancy? The failure of the Governor to call the special election would render it none the less necessary to fill the office by election at the next succeeding general election. The failure of the Governor to call such special election would not deprive the people at the next general election of the right and of the duty of filling the office. I do not regard as of any importance the excerpts made in the briefs from certain of our own opinions. The reason is that the language of an opinion should always be construed with reference to the issues involved. It is evident that in none of the cases cited was the question now up for decision considered by the court, nor did the judge who wrote the opinion have in mind that his language would be urged as a controlling factor in the decision of the question now presented.

Therefore I am of the opinion that the Governor could not by failing to call a special election continue in office the person temporarily or provisionally appointed by him beyond the general election next in point of time, and that the person so appointed should only hold office until the next general election, when, according to the plain intendment of article 7, section 50, of the Constitution, his successor must be elected.

The writer hereof objected to the issuance of an immediate mandate in this case. Our statute on the subject provides, in effect, that the Supreme Court may make rules for the dispatch of business, the manner and time of presenting petitions for rehearing, and time of issuing mandates; provided no mandate shall issue or decision become final until after fifteen judicial days from the time the decision was rendered unless the court, for good cause, shall otherwise direct. Acts 1913, p. 190. No immediate mandate was asked in this case. If it should be said that the petition to advance the cause and the reason given therefor amounted to a request for an immediate mandate and the showing of cause therefor, I

am of the opinion that no good cause was shown. The provisional appointment was made by the Governor more than nine months ago, and his appointee is still discharging the duties of the office. It was evident months ago that the Governor was not going to call a special election, and that it would devolve upon the people to fill the vacancy at the next general election.

Means delayed until the last moment to ask to have his name placed upon the ticket. The Attorney General facilitated the hearing of the case in the court below and in this court in every way possible, and, while the refusal to issue an immediate mandate would have resulted in keeping Means's name off the ticket, that result came about by his own delay in acting in the matter. It is true that he was within his legal rights in waiting until the evening of the last day, but he must be deemed to have also considered the concomitant perils. If he had filed his petition with the Secretary of State when he was first entitled to do so under the statute, sufficient time would have elapsed to have tested out his rights in the courts, and still there would have been a reasonable time left for the State to have filed a motion for rehearing.

Good cause means sufficient cause, and implies that the moving party has exercised due diligence in asserting the right claimed by him in the action, and does not mean merely that the object sought to be accomplished by the issuance of the mandate is a legal one. Therefore, I think the mandate was prematurely issued, and that its issuance constituted error.

Mr. Justice WOOD concurs in that part of the opinion relating to the mandate being prematurely issued.

SMITH, J. (dissenting). The value of decisions of other States, in the construction of the Constitution and laws of this State, depends upon the similarity of the constitutions, or statutes, of the two States. For instance, in the Oregon case cited by the majority, the controlling question there decided was contained in the summary of the learned judge who wrote the opinion for the

court. He said: "We are of the opinion that under
section 11 of article 7 (of the Constitution), just cited,
the term attaches to the person. It is in the nature of
a personal franchise, which may be terminated by the
act of the party himself. He may exercise it for four
years. He may resign it. Then he yields it up to the
power which conferred it upon him, and the people, if
they elect a successor, confer a like franchise upon that
successor, and there is no constitutional or statutory pro-
hibition to that successor holding the office for four
years, and though such election should occur before the
expiration of four years from the last preceding election,
they confer the office for the full constitutional term."
This is all so diametrically different from our Constitu-
tion, and to all the interpretations given our Constitu-
tion, that the decision referred to can be of no value here.

The majority do not undertake to say to what char-
acter of cases section 23 of article 6 of the Constitution
would apply. Nor shall we. It is sufficient to say that
it has no application here, for by its express language it
applies only "when * * * no mode is provided by the
Constitution and laws for filling such vacancy." Here
we have a mode for filling the vacancy in question, and
there is no difference of opinion that section 50 of article
7 is the section applicable to the facts of this case.

This section provides that, "All vacancies occurring
in any office provided for in this section shall be filled by
special election." If the section contained nothing else,
there would appear to be but little opportunity to differ
about its meaning. But there is an exception to this
plain and unambiguous requirement that vacancies in
office shall be filled by special election. That exception
is that the vacancy shall be filled by appointment by the
Governor, if it occurs within a given time before the next
general election. So that the vacancies there referred
to may be filled in only one of two ways, (a) by special
election, (b) by appointment—the applicable method be-
ing determined by the time when the vacancy occurs.
There is an excellent reason for this, which we shall

point out. But if there were no reason except the arbitrary *ipse dixit* of the writers of the Constitution, it would still be the supreme law of the State.

At the first session of the General Assembly after the adoption of the Constitution, legislation was provided which made this section 50 of the Constitution effective. A general election law was enacted, and by section 69 of that act it was made the duty of the Governor "to issue a writ of election to fill such vacancy," to be "holden on a day named in said writ of election," and the person so elected to fill a vacancy shall hold his office for the unexpired term of his predecessor and until his successor is elected and qualified." Acts 1875, p. 105. That section of the statute, as well as section 50 of article 7 of the Constitution, were both omitted from Kirby's Digest, upon the assumption that the third amendment to the Constitution had been adopted. *Rice v. Palmer,* 78 Ark. 432.

The next ensuing session of the General Assembly gave the section of the Constitution under consideration an interpretation which I think is significant. That Legislature must have had it in mind, and have been of opinion, that vacancies could be filled in only two ways, that is, by special election, and by appointment, and it became obvious that in those cases where a special election was the appropriate method, a period of time would intervene during which there would be no one authorized to discharge the duties of the office. This defect was remedied by the act of February 27, 1877 (Acts 1877, p. 16), which became, and is, section 7991 of Kirby's Digest, and reads as follows: "In any case wherein a vacancy in any office shall occur, to be filled, under the provision of the Constitution, by a special election, the Governor shall have the power temporarily to fill the same by granting a commission, which shall expire when the person elected to fill said office, at such special election, shall be duly qualified."

This act was upheld in the case of *Cobb v. Hammock,* 82 Ark. 584, upon the ground that the Constitution had

not prohibited the Legislature from making provision for temporary appointments to fill vacancies until a special election could be held.

In upholding the constitutionality of that statute in the case of *Cobb* v. *Hammock, supra,* the court said: "That article mentions judges of the Supreme Court, circuit and chancery courts, prosecuting attorneys, and all county and township officers. It is clear, therefore, that the Constitution contemplates the calling of special elections to fill vacancies in such offices for unexpired terms, and provides that such vacancies must be filled by special election." That language was not *obiter* in the case in which it was employed, whatever its application, or lack of application, may be to the facts of the instant case. This is also true of the language of HILL, C. J., speaking for the court in the case of *Boyett* v. *Cowling,* 78 Ark. 500, where he said: "* * * and vacancies in offices created by article 7 are to be filled by special election called by the Governor, except when the vacancy occurs in county and township offices within six months and in other offices within nine months of the general election, in which event the Governor appoints for the remainder of the term. Const., art. 7, § 50; Sand. & Hill's Digest, § 2691 (a section not carried into Kirby's Digest)."

It therefore appears to me to be plain that any ambiguity which might appear to exist in section 50 of article 7 is explained away by the legislation enacted immediately after the adoption of the Constitution to make that section effective.

The death of an incumbent is not the only occurrence which may cause a vacancy in office. An officer might resign; be impeached; or be removed from office; accept an incompatible office; change his residence; become insane; be convicted of a felony or other crime involving a violation of official duties. Section 93 of the article on Public Officers, 22 R. C. L., pages 438, 439. Any one or all of these events, as well as others, might be made

grounds for declaring an office vacant. *State* v. *Lansing,*
34 L. R. A. 124.

Each of these contingencies is an event which might,
or might not, exist, and it is inconceivable that there
should be no method by which all electors might know
whether a vacancy did exist. Voters would have no right
to fill a vacancy until in some definite, certain way it had
been ascertained and declared that a vacancy existed.
Interminable confusion might ensue if there was a ques-
tion about the existence of the vacancy, or when it oc-
curred. It requires no stretch of the imagination to see
that this is easily possible. Indeed, the actualities of the
instant case demonstrate the necessity for an official an-
nouncement of a vacancy and of the authorization to the
people to fill it. This section 69 of the election law of
1875, which is omitted from Kirby's Digest, but appears
as section 2691 of Sandels & Hill's Digest, provides the
manner in which this information and authorization may
be given, and if this authorization is to be held unneces-
sary, it may result in permitting an inconsiderable por-
tion of the electorate, in a given case, to fill the vacancy.
The instant case affords a concrete illustration. There
is no question here but that Judge Ross died more than
nine months before the election; but there could be such
a question, and the duty of the Governor to call a special
election would depend on the answer to the question,
When did the vacancy occur? So also as to any other
condition which might cause a vacancy.

The agreed statement of facts recites that appellant
Means filed a petition to have his name printed on the
ticket, as a candidate, on the last day allowed by law for
that purpose, and his name will, therefore, be the only
one to appear on the ticket. It is further recited, in the
agreed statement of facts, that the election proclamation
required by section 2809, Kirby's Digest, in at least one
of the counties of the Seventh Judicial Circuit, omitted
all reference to the election of a circuit judge. Yet, under
the majority opinion, the election could be held, at this
time, even though the name of no candidate had been

printed on the ticket; in which event it would have been possible for a single elector, by voting for some one, or for himself, to have elected that person or himself, if no one else had voted.

Be it remembered that we are discussing vacancies in office. The reference in the opinion of the majority to the section of Mechem on Officers there cited tends to the confusion of the issue. The learned author, in the section mentioned, was referring to the usual regular elections, held at fixed times, pursuant to general law. Of course, the validity of such elections can not be made dependent upon the performance, or nonperformance, of duty by some ministerial officer in regard to publishing notice of the election. This is true because that election is held pursuant to the authority of law, and not of the officer who performs some ministerial act. The law itself gives the notice, and proclamation made by the officer is a mere reminder.

But while this is true of general elections, held at fixed times, for the election of the successors in office of persons whose terms of office are expiring by operation of law, it is not true of special elections. Special elections may, or may not, be held. Vacancies may, or may not, exist. The officer may die, or he may not. He may have resigned, or he may not. He may have been impeached, or he may not. It is not the policy of the law that there should be any question of fact to confuse the elector in the exercise of his suffrage on this subject. All question is supposed to be put at rest by the "writ of election to fill such vacancy" which the law requires the Governor to issue; and until it is issued there is no authority to hold a special election.

This court is committed to the doctrine that the terms of office of all circuit judges begin and end simultaneously, in cycles of four years, and this is true even of judges elected at the intervening regular biennial election in judicial circuits newly created. *State ex rel. Wood* v. *Cotham,* 116 Ark. 36; *State* v. *Askew,* 48 Ark.

82.   And the election about to ensue is not the regular period for electing circuit judges.

So, therefore, an election this year to elect a circuit judge is, as to that office, a special election, and one which can not be held except as authorized by law.   The case of *Sawyer* v. *Haydon,* 1 Nev. 75, explains why this is true.   It was there said: "But when the people are authorized to elect to an office, something more must be done.   They not having the means of fixing the time, place and manner of exercising the elective franchise, the law must fix it for them, either expressly or by implication.   A law which authorizes the people to vote at a general election in the year 1863, for an officer to hold office for two years, can not be said even by implication to authorize the people at the general election in 1864 to vote for a person to fill the same office for the unexpired term of the first incumbent who has died, resigned or been removed, unless it contain some expression indicating that such was the intention of the Legislature. There can be no doubt that the Legislature might confer upon electors the power to vote for an officer to fill a whole or fractional term without using language the most direct and positive in its terms.   But it must be language which, when properly interpreted, shows it to have been the intention of the Legislature to confer such powers."

It only tends to confuse the point at issue to say that the successor to any officer whose term is two years may be elected at any regular biennial election.   This is true because that election is the time fixed by law for electing those officers; but that is not true of officers whose terms do not then expire.   To fill such offices at such election requires the issuance of a writ of election, which is the official notice required by law to the body of the electors to exercise their suffrage in filling the vacancy.   And the reason for it all is that the electors may have certain, definite knowledge, so that the confusion may not exist in any case which in fact exists in the instant case.

The majority say the words "next general election," could not reasonbly be construed to mean the general election at the expiration of the term, for, if so construed, there would be no power for the Governor to make an appointment unless the vacancy occurred within nine months before the expiration of the term. But, as we have shown, and as is stated in the majority opinion, this court held, in the case of *Cobb* v. *Hammock, supra,* that, on account of the silence of the Constitution, the Legislature was empowered to confer authority upon the Governor to make a temporary appointment to fill the vacancy until a special election could be held. Such legislation has been .enacted (section 7991, Kirby's Digest), and under it appointments to office can be made. However, the making of this appointment is not the sole duty of the Governor in the circumstances. His duty is to call a special election, and this is a continuing duty which rests upon him. For instance, a newly elected judge of the Supreme Court, whose term is eight years, might die. A vacancy would then exist, which could legally be filled only by a special election. The Governor might make a temporary appointment, but that appointment is temporary, it being the theory of the law that such appointee would serve only until a special election could be called and held. In the case stated the Governor might fail to call a special election. But such failure would not relieve him of his duty. It would still be his duty to call the special election provided for by the Constitution, and the Governor would continue to rest under this duty until he had discharged it.

We think the words "next general election" may not only be construed to mean the general election at the expiration of the term, but that such is· in fact its true meaning as used in our Contitution, and there is much authority to the effect that the words, "next general election," as used in Constitutions and statutory provisions, mean the next general election held at the time fixed by law for the filling of the particular class of offices to which the appointment was made. *McIntyre* v.

*Iliff* (Kan.), 68 Pac. 633; *In re Supreme Court Vacancy*
(S. D.), 57 N. W. 495; *State ex rel. McGee* v. *Gardner*
(S. D.), 54 N. W. 606; *People* v. *Wilson,* 72 N. C. 155;
*People* v. *Col,* 132 Cal. 334. See, also, cases both *pro*
and *con* in the note to *Wendorff* v. *Dill,* 50 L. R. A. (N.
S.) 359; and *State ex rel. Fish* v. *Howell,* 50 L. R. A.
(N. S.) 336.

It occurs to me, and I say it with the greatest defer-
ence to the majority, that they are led into confusion
and error by attempting to render impossible an eventu-
ality which the lawmakers never contemplated, that is,
that the Governor would fail to call a special election.
But we should not, on that account, be led away from
the viewpoint of the men who wrote the Constitution
and who, in writing it, assumed that its provisions would
be discharged by the officers upon whom that duty would
be imposed.

Just here the discussion and decision of the Supreme
Court of California in the case of *People ex rel. McKune*
v. *Weller, Governor* (11 Cal. 49), is instructive. After
deciding, as shown by the syllabi in that case, that an
election to fill a vacancy in the office of district judge is
invalid, unless made under and in pursuance of the procla-
mation of the Governor, and that the statute requiring the
Governor to issue his proclamation of election to fill vacan-
cies in certain offices, is mandatory and an essential pre-
requisite to all such elections; and that the object of the
proclamation is to give notice to the electors that such elec-
tion will be held, the court proceeded to answer the argu-
ment that the Governor might, by inaction or dereliction,
nullify the law. It was there said: "It is true, the Gov-
ernor may prolong or increase his power by failing to
make the proclamation. But this can not be expected in
these cases of vacancy, nor, indeed, in any cases. It is
not to be supposed that the executive will prove dere-
lict to his duty, especially for so small an object. The
same argument would deny but a scanty portion of his
power. Under the pardoning power, he might, by a sys-
tem of universal pardons, practically abrogate the whole

criminal law; indeed, he might introduce general anarchy by refusing to execute the laws. The Legislature may dissolve the government by refusing to levy taxes or to make appropriations, but these possible abuses of power are not reasons for refusing to give or acknowledge it. The evils on the other side are more probable of occurrence, and scarcely less injurious in character. If we hold to the principle that, whenever a vacancy happens, an election may be valid without notice to the people, frauds may and will be committed. This case may not afford an illustration, but others would. Where would be the limits of the *principle?* for we must have some general rule. It would apply to districts of more than one county as well as smaller districts—to cases of vacancy in other offices as well as those of judges—and to judges of the Supreme Court as well as of districts and counties. If death or resignation happens the day before the election, and when the fact was unknown—possibly kept concealed by design—all that it would be necesary for a man to do would be to get a few votes—it matters not how few—and he could get the office, not only *without* but *against* the will of the great body of the people. The establishment of the principle would beget a laxity in the giving of this public notice of elections which might keep the people, in many instances, in ignorance of the offices to be filled at the various elections; and all this is to be done because of a legal presumption of 'knowledge by the people of law and facts,' which every man knows is not always possessed even by the best informed, of which this case is itself a sufficient illustration. We can not hold as nugatory a plain statutory enactment upon reasons so unsatisfactory. We think we have shown that the definition given by the authorities of directory acts, namely, those which are not of the substance of the thing provided for, has no application to this statute; that, on the contrary, the means, and only sure and efficient means, of bringing to the people authentic knowledge of their electoral rights and duties is of the very substance of the election at which

they are to exercise them; and that, if we hold in cases of vacancies that the act requiring this proclamation which gives this intelligence is merely directory, and therefore, to be followed or not at pleasure, we may, with the same propriety, set aside every provision of law regulating the time, place and manner of elections. We should thus hold that an election may be independent of legislative control, protection or regulation."

We are of the opinion that the court below properly denied the application for mandamus, and that the action of the lower court should be affirmed.

Mr. Justice WOOD concurs herein.