The Honorable Randy Minton State Representative 880 Minton Road Ward, Arkansas 72176-8618
Dear Representative Ward:
I am writing in response to your request for an opinion on two unrelated legal questions, as follows:
 1. May a person who is currently employed as a maintenance employee of the Secretary of State's office serve in the General Assembly?
 2. May a person appointed as a member of a Quorum Court, by the Governor, in a particular district run for that position in the same district in view of the fact that due to reapportionment, the district lines were totally changed?
RESPONSE
In my opinion a conclusive response to your first question would require reference to the exact facts surrounding the person's current employment. The answer depends upon whether the position held is a "lucrative office" for purposes of Arkansas Constitution, art. 5, § 7. It appears from your designation of the position as one of "maintenance employee," that it would not constitute a "lucrative office," and if so, there is no prohibition against such a person serving in the General Assembly. Certain statutory restrictions, however, will thereafter attach to the person's state employment.
In response to your second question, the answer is unclear under current law and may depend upon the materiality of the changes in the particular quorum court district. The prohibition against an appointee "succeeding himself" in office was intended to remove any advantage an incumbent appointee might have in the succeeding election. In my opinion a court might be willing to hold this prohibition inapplicable only if the changes in the composition of the quorum court district are material enough to obviate any such potential advantage. This will depend upon the facts of each individual district.
Question 1 — May a person who is currently employed as a maintenanceemployee of the Secretary of State's office serve in the GeneralAssembly?
As an initial matter, I should point out that I have found no statute prohibiting such an employee from being a candidate for elective office. In fact, A.C.A. § 21-1-207 (Supp. 2001) provides as follows:
 Notwithstanding any law to the contrary, no employee of the state, a county, a municipality, a school district, or any other political subdivision of this state shall be deprived of his or her right to run as a candidate for an elective office or to express his or her opinion as a citizen on political subjects; unless as necessary to meet the requirements of federal law[1] as pertains to employees.
Your question, however, inquires as to whether a maintenance employee of the Secretary of State's office can serve in the General Assembly. This question implicates Arkansas Constitution, art. 5, § 7, which provides as follows:
 No judge of the supreme, circuit or inferior courts of law or equity, Secretary of State, Attorney General for the State, Auditor or Treasurer, recorder, or clerk of any court of record, sheriff, coroner, member of Congress, nor any other person holding any lucrative office under the United States or this State (militia officers, justices of the peace, postmasters, officers of public schools and notaries excepted), shall be eligible to a seat in either house of the General Assembly.
The position of maintenance employee at the Secretary of State's office is not one of the enumerated positions in the constitutional provision above, and the question thus becomes whether it falls within the definition of a "lucrative office," under the general language of the provision. I had occasion to recite the legal tests for determining when a particular position constitutes an "office," falling within the meaning of such a provision, or merely an "employment" falling outside the definition, in Op. Att'y Gen. 2001-127 (copy enclosed). I quoted language from an opinion of my predecessor (Op. Att'y Gen. 97-364), as follows:
 The distinction between a public office and a public employment is not always clearly marked, but the governing principles are well established. As noted above, a public officer ordinarily exercises some part of the State's sovereign power. In addition, the tenure of office, compensation, and duties of an officer are usually fixed by law. The taking of an oath of office, the receipt of a formal commission, and the giving of a bond all indicate that a public office is involved, although no single factor is ever conclusive. See Bean v. Humphrey, supra; Martindale v. Honey, 259 Ark. 416, 533 S.W.2d 198
(1976).
Again, all the facts of the particular position at issue would have to be evaluated to come to any definitive conclusion. It appears from your characterization of the position as one of "maintenance employee," that the position would not fall within the definition of a "lucrative office" as that term has been interpreted. Assuming this fact, I can find no prohibition against such person's service in the General Assembly.
I will note, however, that if the state employee you describe is elected to the General Assembly, certain restrictions on the person's state employment will thereafter attach. See A.C.A. § 21-1-402(a)(2) (Supp. 2001) (allowing continued state employment, but restricting reclassifications and pay increases without certain legislative and gubernatorial approval). Reference should also be had to any ethical restrictions on the voting practices of such member.
Question 2 — May a person appointed as a member of a Quorum Court, by theGovernor, in a particular district run for that position in the samedistrict in view of the fact that due to reapportionment, the districtlines were totally changed?
In my opinion the answer to this question is unclear under current law and may depend upon the materiality of the changes made to a particular district.
The relevant constitutional restriction is found at Arkansas Constitution, Amendment 29, § 2. The Governor is charged by Amendment 29 with the responsibility to fill vacancies in certain offices, including the office of quorum court member. See Amendment 29, § 1; A.C.A. §14-14-1310(b); and Op. Att'y Gen. 92-142. Section 2 of the Amendment provides that "[n]o person appointed under Section 1 shall be eligible for appointment or election to succeed himself." Your question is whether the gubernatorial appointee can "succeed himself" where the district has "totally changed" due to reapportionment of the quorum court districts under A.C.A. § 14-14-401 to -407 (Repl. 1998).
My predecessor issued two opinions on similar questions after the required 1990 redistricting. See Op. Att'y Gen. 91-447 (appointed member of the quorum court may seek election to a district which is, in fact, a new one due to changes in geographic parameters, constituents, and the district number, because he would not thereby be "succeeding himself," but noting that there may be close questions in particular instances concerning whether a "new" district actually exists, or whether the old one has only been modified slightly); 91-379 (quorum court members could make a convincing argument that they were eligible to run for newly created districts because in doing so they were not "succeeding themselves," but success of the argument may depend upon whether in fact a particular district has changed, both in terms of geography and the people it represents).
I had occasion to address an analogous issue in Op. Att'y Gen. 2001-165. In that opinion, the question was whether a "circuit-chancery" judgeship appointee could legally succeed himself under Amendment 29 in light of the fact that Amendment 80 changed the judgeship into a "circuit judgeship." I responded in the negative and quoted from another opinion of my predecessor, which details the people's intention in drafting the prohibition in Amendment 29, § 2:
 In my opinion, the court will be willing to look at the reasons for the Amendment 29, § 2 prohibition, the evil sought to be remedied, and to apply its provisions in light of that intention. The people's preference for filling offices by election, rather than appointment, has been noted by the Arkansas Supreme Court. See, e.g., Means v. Terral, 145 Ark. 443, 225 S.W. 601 (1920). Amendment 29 provides for the temporary filling of vacancies by gubernatorial appointment only until such time as a general election can be held. Amendment 29, §§ 1 and 4. The prohibition contained in section 2 against an appointee succeeding himself, however, must contain an added intention, as it would not be violative of the policy expressed in sections 1 or 4 for an appointee to hold the office if duly elected at a succeeding election by the people. In my opinion, the intention of Amendment 29, § 2 is to prohibit the appointee from gaining the unequal advantage of incumbency as against those who would seek election to the office. In my opinion, under the circumstances you describe, the Arkansas Supreme Court would evaluate this potential advantage in light of the actual changes made in the geography and constituency served by the new district. In some cases these changes may indeed be "all form and no substance." [Referring to Op. Att'y Gen. 77-189.] In others, material changes in representation may lessen or obviate any such advantage. This is ultimately a question of fact for a court of competent jurisdiction.
Opinion 2001-165, quoting Op. Att'y Gen. 98-076 at 9-10. (Emphasis added). See also Ops. Att'y Gen. 77-189 (chancellor appointed to fill vacancy in one district not prohibited from seeking office in newly created judicial district composed of two of the three counties from former district, because of "material changes" in the make-up of the district).
I have not found any reported judicial decision on the issue you raise. I cannot state definitively, therefore, that the law allows the succession of the quorum court member you describe. Additionally, as noted above, the issue may turn upon the facts of individual cases. Challenges to the candidacy or service of such a person must be brought in a judicial forum, where the issue could be definitively resolved. See again, Op. Att'y Gen. 98-076.
Senior Assistant Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:ECW/cyh
Enclosure
[1] The federal "Hatch Act" is sometimes implicated in this regard. That Act, which is codified as 5 U.S.C.A. § 1501 et seq., provides that a state or local officer or employee covered by the act may not be a candidate for elective office. 5 U.S.C.A. § 1502(a)(3); see also Op. Att'y Gen. 96-075. The act applies to individuals whose principal employment by a state or local agency is in connection with an activity that is financed in whole or in part by loans or grants made by the United States or a federal agency. 5 U.S.C.A. § 1501(4). Non-partisan races and candidates for those races are exempted from the Hatch Act.5 U.S.C.A. § 1503.