DAN McCRAW ET AL *v.* WILLIAM D. PATE

73-68                                494 S.W. 2d 94

Opinion delivered April 30, 1973
[Rehearing denied June 4, 1973.]

*Glover & Sanders* and *Jim Guy Tucker,* Atty. Gen., for appellants.

*Lane, Muse, Arman & Pullen* and *Thomas A. Glaze,* for appellee.

J. FRED JONES, Justice. At the general election in November, 1972, Tommy Smith was elected sheriff of Garland County. At that same election the incumbent sheriff, Eugene "Bud" Canada, was elected to the Arkansas Senate from Garland County. On December 26, 1972, Tommy Smith died and on December 29, 1972, Mr. Canada resigned from the office of sheriff, whereupon the Governor appointed the appellee, William D. Pate, to fill out the unexpired term of Canada. The term for which Canada had been elected sheriff expired on December 31, 1972.

The appointment of Mr. Pate was made on December 29, 1972, and the certificate of appointment and commission recited his appointment as sheriff of Garland County "for a term to expire 12-31-72."

Within 15 days after the death of Smith, petitions were filed with the Governor requesting a special election for the office of sheriff of Garland County pursuant to the provisions of Act 196 of 1971, Ark. Stat. Ann. § 3-106 (Supp. 1971). This statute reads as follows:

"Whenever a person shall have been elected at a General Election to fill any elective county office and the person so elected shall, subsequent to the date of the General Election and prior to January 1 of the year in which such person is to take office, die or withdraw in writing, a Special Election to choose a person to assume said office may be held if petitions therefor, filed by not less than fifteen per cent (15%) of the qualified electors of the county, as determined by the total number of votes cast for all candidates for the Office of Governor in the next preceding General Election, shall be filed with the Governor within fifteen (15) days from the date of such death or written withdrawal from said office. Upon receipt of such petitions, the Governor shall call a special election to elect a person to fill such vacant county office. Nominations therefor shall be in accordance with the procedures, and the Governor shall be guided in the calling of such special election, as provided in subsection (e) of Section 5 of this Article [§ 3-105] with respect to special elections to fill a vacancy in office. The incumbent holding such office shall serve until such time as the results of such special election are certified and the newly elected official takes the oath of office and qualifies."

On February 13, 1973, the Governor issued a proclamation calling a special election in Garland County for the purpose of electing a sheriff. The filing deadline for candidates was set for 12 noon on March 1, 1973; the first primary was set for April 10, 1973, with runoff election, if one should be necessary, set for April 24, 1973, and the special general, or final election for the office,

was set for May 8, 1973. Several candidates, both Democratic and Republican, qualified as candidates for sheriff at the special election and Sheriff Pate also attempted to qualify as a candidate. He tendered his filing fee and political practice pledge to the proper election officials but the tenders were refused on the ground that he was not eligible as a candidate to succeed himself under Amendment 29 of the state Constitution. Amendment 29 was adopted in 1938 and reads as follows:

"Sec. 1. Vacancies in the office of United States Senator, and in all elective state, district, circuit, county, and township offices except those of Lieutenant Governor, Member of the General Assembly and Representative in the Congress of the United States, shall be filled by appointment by the Governor.

Sec. 2. The Governor, Lieutenant Governor and Acting Governor shall be ineligible for appointment to fill any vacancies occurring or any office or position created, and resignation shall not remove such ineligibility. Husbands and wives of such officers, and relatives of such officers, or of their husbands and wives within the fourth degree of consanguinity or affinity, shall likewise be ineligible. No person appointed under Section 1 shall be eligible for appointment or election to succeed himself.

Sec. 3. No person holding office contrary to this amendment shall be paid any compensation for his services. Any warrant, voucher or evidence of indebtedness issued in payment for such services shall be void.

Sec. 4. The appointee shall serve during the entire unexpired term in the office in which the vacancy occurs if such office would in regular course be filled at the next General Election if no vacancy had occurred. If such office would not in regular course be filled at such next general election the vacancy shall be filled as follows: At the next General Election, if the vacancy occurs four months or more prior thereto, and at the second General Election

after the vacancy occurs if the vacancy occurs less than four months before the next General Election after it occurs. The person so elected shall take office on the 1st day of January following his election.

Sec. 5. Only the names of candidates for office nominated by an organized political party at a convention of delegates, or by a majority of all the votes cast for candidates for the office in a primary election, or by petition of electors as provided by law, shall be placed on the ballots in any election."

On February 21, 1973, Mr. Pate filed a petition in the circuit court for a writ of mandamus directing the chairman and secretary of the Garland County Democratic Committee and the county clerk, to certify his name as a candidate and to place his name on the ballots. The respondents answered by admitting they had failed and refused to accept petitioner Pate's ballot fee and they prayed for a declaratory judgment determining his status under Amendment 29 to the Constitution and, his rights and legal status as a candidate for election to the office of sheriff of Garland County in the special election to be held pursuant to the Governor's proclamation.

On February 27, 1973, Mr. Pate filed an amendment to his original petition questioning the validity of the special election called under the provisions of section 3-106 and questioning the constitutionality of the statute under Amendment 29 of the state Constitution. Mr. Pate then prayed for a declaratory judgment holding section 3-106 inapplicable to him. In the alternative he prayed that a writ of mandamus issue requiring the respondents to permit him to qualify as a candidate for sheriff in the special elections and to place his name on the ballots.

On February 27 the trial court entered an order for a writ of mandamus directing the respondents to accept Pate's ballot fee, etc. permitting him to qualify as a candidate for sheriff of Garland County in the called special election, and directing them to cause his name to be printed on the special election ballots. The order then recited as follows:

". . . final disposition of this cause shall be rendered by the Court upon the submission of all pleadings, briefs and contentions of the parties as directed by this Court."

Following amendments to pleadings, the submission of briefs, and arguments of counsel, the trial court on March 20, 1973, entered its findings and final judgment thereon as follows:

". . . the Court doth find:

1. That the petitioner was duly and legally appointed by the Governor pursuant to the Arkansas Constitution to an existing vacancy of Sheriff of Garland County, Arkansas.

2. That the petitioner is in possession of said office of Sheriff of Garland County and is legally authorized to pursue the duties of the Sheriff of Garland County.

3. That Ark. Stat. Ann. § 3-106 is in contravention of Amendment 29 to the Arkansas Constitution and the special elections called pursuant to § 3-106 are unconstitutional and void.

4. That since the special elections are unconstitutional, no finding or decision is necessary regarding the constitutionality of Ark. Stat. Ann. § 3-615.

IT IS THEREFORE, considered, ordered and adjudged that Ark. Stat. Ann. § 3-106 is not applicable in this cause and further that § 3-106 is unconstitutional; that the special elections called pursuant to § 3-106 are illegal and invalid."

On appeal to this court the appellant-respondents rely on the following points for reversal:

"The trial court erred in holding that the appellee is eligible to succeed himself in the office of sheriff, as he was not eligible to be a candidate following his appointment, nor serve if elected.

Appellee having elected to have his name placed on the ballot as a candidate, is now precluded from asserting the illegality of the special election.

The trial court erred in ruling that Ark. Stat. Ann. § 3-106 is not applicable to the facts of this cause and further erred in ruling that Ark. Stat. Ann. § 3-106 is unconstitutional and that the special election called pursuant to that statute, is illegal and invalid."

We shall not discuss the first two points for they become moot under the conclusion we have reached. We agree with the trial court that section 3-106, *supra*, is unconstitutional as it applies to this case, and that the special election called pursuant to that statute is illegal and invalid. The question, therefore, comes down to whether or not section 3-106 is in conflict with Amendment 29 of the state Constitution, and we have concluded that it is.

Article 3, § 8 of the Constitution provides:

"The general elections shall be held biennially, on the first Monday of September; but the General Assembly may by law fix a different time."

In construing this provision of the Constitution in *Hendricks* v. *Hodges, Sec'y State,* 122 Ark. 82, 182 S.W. 538, this court said:

"There is an express grant in the Constitution to the Legislature of the power to change the dates of biennial elections. Article 3, section 8. The only limitations upon that power is that elections shall be held biennially, and, of course, the Legislature has no power to provide otherwise."

Article 6, § 23 of the Constitution provides:

"When any office from any cause may become vacant, and no mode is provided by the Constitution and laws for filling such vacancy, the Governor shall have the power to fill the same by granting a commission, which shall expire when the person elected to fill said office, at the next general election, shall be duly qualified."

Article 7, § 46 of the Constitution provides for the election of one sheriff in each county for a term of two years. Article 7, § 50 (prior to the adoption of Amendment 29) provided as follows:

"All vacancies occurring in any office provided for in this article shall be filled by special election, save that in case of vacancies occurring in county and township offices six months and in other offices nine months, before the next general election, such vacancies shall be filled by appointment by the Governor."

The Constitution was, of course, adopted in 1874. In 1877 the legislature passed Act 20, digested in Kirby's Digest, § 7991, as follows:

"In any case wherein a vacancy in any office shall occur, to be filled, under the provision of the constitution, by a special election, the governor shall have the power temporarily to fill the same by granting a commission, which shall expire when the person elected to fill said office, at such special election, shall be duly qualified."

Section 50 of Art. 7 of the Constitution, along with its implementing statute, Act 20 of 1877, remained unchanged until 1938 when Amendment 29 superseded Section 50 of Art. 7 as well as Act 20 of 1877.[1]

The case of *Means* v. *Terral*, 145 Ark. 443, 225 S.W. 601, arose under Section 50 of Art. 7 prior to the adoption of Amendment 29 and may shed light on some of the problems involved under Section 50 and some of the reasons for the adoption of Amendment 29. In the *Means* case a vacancy occurred in the office of circuit judge by the death of the incumbent in June, 1919. His term of office would have expired on December 31, 1922, so the Gov-

---

[1]Act 20 of 1877 was carried forward from Kirby's Digest, § 7991, to Crawford & Moses Digest, § 10334, and then to Pope's Digest, § 14334. It was not carried forward into Ark. Stat. Ann. (1947) but the digesters recognized that it had been superseded by Constitutional Amendment 29. This statute was repealed outright in 1953 as an obsolete and conflicting section of the statutes. Act 62, 1953.

ernor made a temporary appointment to fill the vacancy. The Governor, however, failed to call the special election provided for in section 50. Attorney Means attempted to file his certificate of nomination with the Secretary of State to run as a candidate for the office in the general election to be held on November 2, 1920. The matter reached this court on appeal by Means from the judgment of the circuit court denying his petition for mandamus, and the question presented on appeal was whether or not an election to fill the vacancy for the unexpired term could be held at the approaching biennial general election on November 2, 1920, without a proclamation by the executive calling for an election on that date to fill the vacancy. Of course, the incumbent had died more than nine months prior to the next general election (1920) and section 50 of Art. 7 required that the vacancy be filled by special election. Consequently, the Governor had no constitutional authority to fill the unexpired *term* by appointment, but he did have authority under Art. 6, § 23, *supra,* and Kirby's Digest, § 7991, *supra,* to temporarily fill the vacant office by granting a commission. The statute under which the commission was issued provided that the commission should expire when the person elected to fill the office at such special election should be duly qualified, so the Governor simply filled the vacancy by appointment under this statute and failed or refused to call a special election under section 50, *supra.*[2]

It was the appellant's contention in *Means, supra,* that notwithstanding the failure of the Governor to call a special election as required by the Constitution, the commission issued to the incumbent would expire upon the election of a judge at the approaching general election (the first general election after the office became vacant) to fill the unexpired term. It was the contention of the respondent Secretary of State, that the vacancy could only be filled at a special election called by the Governor to elect a judge to fill the unexpired term. This court pointed out at the outset in *Means,* that the Constitution did not affirmatively confer power on the Governor to make an appointment at all, unless the vacancy occurred within

---

[2]The Governor had precedent for this procedure. See *Cobb* v. *Hammock,* 82 Ark. 584, 102 S.W. 382.

a specified time before the next general election, which in that case was nine months. This court then said:

> "It is only on account of the silence of the Constitution that the Legislature is empowered to confer authority upon the Governor to make a temporary appointment to fill a vacancy until a special election could be held. *Cobb* v. *Hammock,* 82 Ark. 584; *State ex rel.* v. *Stevenson,* 89 Ark. 31. In either event, whether the appointment be made under the statutory authority where the vacancy occurs more than nine months before the next general election, or be made under the constitutional authority where the vacancy occurs within nine months before a general election and the term extends beyond the next election, the appointment is only temporary and not for the unexpired term. * * * *It was clearly the policy of the framers of our Constitution to provide for the filling of vacancies in office by election and not by appointment* . . . ." (Emphasis added).

Citing from *State ex rel.* v. *Stevenson, supra,* this court then said:

> " 'It was evidently the intention of the framers of the Constitution of 1874 that the appointing power should be limited. Its policy was to fill vacancies by election.' "

This court in *Means* then continued:

> "An election by the people to fill a vacancy, whether at a special election or at the succeeding general election, is for the unexpired term, but, as before stated, any appointment made by the Governor is, under the Constitution, temporary. We have just said that an appointment by the Governor within nine months before the next general election expires on the filling of the vacancy for the unexpired term at the next election. The words 'next general election,' could not reasonably be construed to mean the general election at the expiration of the term, for, if we put that construction on the language, there would

be no power conferred by this section of the Constitution for the Governor to make an appointment, unless the vacancy occurred within nine months before the expiration of the term. It is clear therefore that the framers of the Constitution, pursuant to the policy of having biennial general elections so that all vacancies should be filled by election, did not intend to confer any express authority upon the Governor to make an appointment, except where the vacancy occurred within nine months before the next general election, meaning the next election succeeding the occurrence of the vacancy, and that the commission issued under that appointment should expire at that election. If, therefore, the vacancy in this instance had occurred within nine months before the next general election, the calling of a special election would have been unnecessary, and the people would, by operation of law, be called on to fill the vacancy for the unexpired term at this election."

It is abundantly clear that Amendment 29 completely eliminated and superseded section 50 of Art. 7 and by so doing, it eliminated and superseded the only constitutional authority for the filling of vacancies in constitutional offices by *special* elections. Section 1 of Amendment 29 is clear and to the point; it just as clearly eliminated special elections as a menas of filling vacancies in the designated offices as section 50 of Art. 7 provided therefor. Section 50 simply said "all vacancies . . . shall be filled by special election. . ." and section 1 of Amendment 29 simply says "vacancies. . . in all . . .county . . .offices . . .shall be filled by appointment by the Governor." Our interpretation of Section 1 of Amendment 29 renders moot the application of section 2 to the facts in the case now before us, and section 3 has no application and is not involved. Section 5 does not mention *special* elections and apparently applies to *general* elections. In any event, no question is raised under this section in the case at bar.

Now, after providing in section 1 of Amendment 29 for appointment rather than special elections to fill vacancies in office, section 4 of the Amendment clarified and settled the question that arose in the *Means* case. Section 4

simply provides that the appointee shall serve during the entire unexpired term in the office in which the vacancy occurs if such office would in regular course be filled at the next general election if no vacancy had occurred. If the office would not in *regular course* be filled at the next general election, it would nevertheless be filled at the next general election if the vacancy occurs four months or more prior thereto. If the vacancy occurs less than four months before the next general election, the office is to be filled at the second general election after the vacancy occurs. In any event, the person so elected takes office on the first day of January following his election.

The legality of Pate's appointment is not questioned in this case. There seems to be no question that he became an "officer" when he took the oath under his appointment and entered upon his duties as sheriff. It is quite true the term of office to which he was appointed expired on December 31, 1972, two days after his appointment, but section 5 of Art. 19 of the Constitution says that "all officers shall continue in office after the expiration of their official terms until their successors are elected and qualified," and that is all section 5 does say. The vacancy created by Senator Canada's resignation occurred more than four months before the next general election so section 4 of Amendment 29 requires that the vacancy be filled at the next general election.

In *Justice* v. *Campbell,* 241 Ark. 802, 410 S.W. 2d 601, County Judge Campbell, whose term of office would have expired on December 31, 1966, failed to run for re-election and Tom Gulley was elected to the office at the 1966 general election. Mr. Gulley died before assuming office and before Campbell's term had expired. The primary question in that case was whether a vacancy occurred in the office of county judge at the end of the term for which Campbell had been elected. Mr. Justice was appointed to the office under a statute (Act 311 of 1929), Ark. Stat. Ann. § 12-113 (Repl. 1956), which provided "when a person elected to an office (and) shall by reason of death, or for any other cause, fail to qualify, the office shall be deemed vacant and shall be filled as provided by the Constitution and statutes of the State." In *Campbell* we held

this statute unconstitutional as in conflict with Art. 19, § 5, *supra*. We concluded the *Campbell* opinion as follows:

"Under the facts in the case at bar we hold that there was no vacancy in the office of Pulaski County Judge on January 1, 1967; that the power of appointment prescribed in Ark. Stat. Ann. § 12-113 is therefore not applicable in such a situation; and that Arch Campbell is authorized to hold the office until his successor is elected and qualified, as prescribed by Art. 19, § 5, of the Constitution. We are further of the opinion that this Constitutional provision contemplates the filling of the new term by election. The phrase, 'until their successors are elected and qualified,' is susceptible to no other reasonable implication but that the office be filled by a vote of the people. There are numerous instances in which legislation is appropriately enacted to implement the requirements of the Constitution." [3]

Our decision in *Justice* v. *Campbell* did not end the controversy. After we held in that case that there was no vacancy in the office and that Campbell would hold over until a successor would be elected and qualified, the Governor by executive proclamation called a special election to fill the office. The validity of the special election reached this court through a taxpayer's suit in the case of *McCoy* v. *Story,* 243 Ark. 1, 417 S.W. 2d 954. The appellant in *McCoy* attempted to sustain the validity of the special election under the bare language of Art. 19, § 5, of the Constitution which simply says:

"All officers shall continue in office after the expiration of their official terms until their successors are elected and qualified."

The appellant's sole contention in *McCoy* was that Art. 19, § 5, was self-executing and required no legislative implementation in order to fill the office at a special election. We pointed out in *McCoy* that Art. 19, § 5, was not self-executing for such purpose; that it only indicates

---

[3]We might well have added "but this is not one of them."

a principle that a successor should be elected but lays down no rules concerning such election and affords no method or procedure by which the right to elect may be enjoyed or when such election should be held. We then quoted from *Campbell* "there are numerous instances in which legislation is appropriately enacted to implement the requirements of the Constitution." We must keep in mind that in *McCoy* we were considering whether Art. 19, § 5, was self-executing for the purpose of filling a vacant office by election. The question was whether Art. 19, § 5, alone, *contained* the right to call a special election to fill a vacancy in a county office and we held that it did not.

The appellant argued in *McCoy* that without a special election an officer could be continued in office for an indefinite period simply by not providing for election of his successor. We rejected this argument by inferentially pointing out that we already have laws preventing such occurrence in these words:

> "Let it first be said that the quoted argument is plainly erroneous, for failure of the Legislature to act will *not continue the present Pulaski County Judge in office for an indefinite period of time*— rather, the failure to act only continues him in office until the general election in November, 1968."

Then quoting from *Merwin* v. *Fussell,* 93 Ark. 336, 124 S.W. 1021, where we quoted from McCrary on Elections, we said:

> " '* * * it must be conceded by all that time and place are the substance of every election,' and that 'it is, of course, essential to the validity of an election that it be held at the time and in the place provided by law.' "

Further reciting from *Fussell* we continued:

> " 'The authority to hold an election at one time will not warrant an election at another time, and an election held at a time not fixed by the law itself will be void.' "

In *McCoy* we then continued:

> "The matter is governed purely by statute, of course, because the system of elections followed in the United States was unknown to the common law.
>
> Article 19, Section 5, of our Constitution does not specifically order an election, nor does it fix any time for holding such an election, and this being true, the language of our court in *Simpson* v. *Teftler,* 176 Ark. 1093, 5 S.W. 2d 350, is completely applicable:
>
> 'The Legislature alone had authority to provide for an election, and any election held without authority is a nullity.' "

It must be remembered that in *McCoy* v. *Story* we were still dealing with the vacancy in the office of Pulaski County Judge in which we held in *Justice* v. *Campbell* that Campbell would continue in office after his term had expired and so hold until his successor should be duly elected and qualified. So we concluded the opinion in *McCoy* v. *Story* with this statement:

> "*Justice* v. *Campbell, supra,* is here controlling. In that opinion, we stated that implementary legislation by the General Assembly was necessary; had we felt otherwise, we would simply have held that the Constitution directed that an election be held forthwith."

It may be that this statement could be interpreted as an invitation, or suggestion to the Legislature, that *new* implementary legislation was in order to fill the vacancies in constitutional offices at special elections to be held between general elections, but such was not our intention. We did not say, nor did we intend to imply, in *McCoy* or in *Campbell,* that *additional* implementary legislation from what we already had was necessary to fill the vacancy in the county judge's office. In both instances a special election was attempted without authority. First, in *Campbell,* under a void statute, Ark. Stat. Ann. § 12-113 (Repl. 1956) and second, under Art. 19, § 5, argued to be entirely self-executing and permissive as to time and place for holding elections. We simply held in *McCoy* that Art. 19, § 5, did not designate the time or place for

holding an election to fill such vacancies and that an election could not be held under that section of the Constitution without implementary legislation. We did not say in *Campbell* or in *McCoy when* the vacancies in the office of county judge should be filled by election, for that question was not presented to us. We did attempt in *McCoy,* however, to prevent a misconstruction of our opinion in this connection by the insertion of footnotes which read as follows:

"Originally, Section 8 set the general election for the first Monday of September, but the General Assembly, under the authority of the amendment, changed the date of such elections to the Tuesday next after the first Monday in November, in every second year, and this applies to all elective state, county, and township officers 'whose term of office is fixed by the Constitution or General Assembly at two (2) years.'

Amendment 29 provides that vacancies (except those occurring in the offices of Lieutenant Governor, members of the General Assembly, and Representatives in the Congress of the United States) shall be filled by appointment by the Governor. It will be observed that except for the offices enumerated in parenthesis, the people, in passing this amendment, set forth this manner of filling vacancies in constitutional offices, rather than by special elections."

In *Glover* v. *Henry,* 231 Ark. 111, 328, S.W. 2d 382 (a case involving school board election recalls), we had occasion to mention Section 4 of Amendment 29 and there we said:

". . . § 4 of Amendment 29 contemplates that the successors to the governor's appointees will be elected at the general election and will take office on the following January first. The constitution has always provided that elective state, district, circuit, county, and township officers be elected at the general election, Schedule, § 3, and Art. 3, § 8; so Amendment 29 creates a workable plan for filling vacancies in these offices."

We conclude, therefore, that Art. 7, § 46 of the Constitution requires that a county sheriff be elected for a term of two years; that Art. 3, § 8, provides that the general elections shall be held biennially, on the first Monday of September, with a reservation of legislative power to fix a different time; that by initiated measure in 1926, Ark. Stat. Ann. § 3-802 (Repl. 1956), the time for holding general elections was changed to Tuesday next after the first Monday in November in every second year; that Section 1 of Amendment 29 to the Constitution provides that vacancies in the office of all elective county offices shall be filled by the appointment of the Governor and that Section 4 of Amendment 29 provides that such appointee shall serve during the entire unexpired term in the office in which the vacancy occurs if such office would in the regular course be filled at the next general election if no vacancy had occurred. In any event, under the remaining contingencies set out in Section 4 of Amendment 29, the office is to be filled at a general election, and the person so elected is to take office on the first day of January following his election.

The appellants argue that the *term of office* to which Pate had been appointed expired on December 31, 1972, two days after his appointment and he was, therefore, a holdover into a *new term of office* not contemplated by Amendment 29 without new implementary legislation providing for the filling of such new term of office. Section 1 of Amendment 29 does not distinguish between old and new terms of office. It refers only to *vacancies in office,* and provides that such vacancies shall be filled by executive appointment regardless of when they occur (rather than special elections as was provided in Art. 7, § 50). Section 4 of Amendment 29 has only to do with how long an appointee shall serve in relation to filling the office at general elections and has nothing to say about appointments or special elections.

The Legislature has the constitutional authority to change the date of general elections; it has the constitutional authority to implement constitutional provisions calling for or requiring legislative implementation, but the Legislature does not have the constitutional authority

to implement Amendment 29 by breathing new life into section 50 of Art. 7 which has been superseded by Amendment 29.

There is no question that Sheriff Pate is an "officer" within the meaning of Art. 19, § 5, of the Constitution, and there is no question that the official term of the office to which he was appointed expired two days after his appointment. Nevertheless, under section 5 of Art. 19, he may continue in office after the expiration of the official term until his successor is elected (at the next general election) and qualified. We do not pass upon whether Mr. Pate may be a candidate to succeed himself for that question is not before us.

The judgment is affirmed.

HARRIS, C.J., and BROWN and FOGLEMAN, JJ., dissent.

CARLETON HARRIS, Chief Justice, dissenting. My views in this case are very similar to those of the Attorney General expressed in oral argument before the court. I do not consider this litigation to be controlled by Amenment No. 29 to the Arkansas Constitution, but rather, to be controlled by Article 19, Section 5, of the Constitution. Had Tommy Smith died after he had taken office on January 1, 1973, instead of dying after being elected in November, 1972 (December 26, 1972), but before January 1, 1973, then I would agree that Amendment No. 29 controls. But our constitutional provisions must be read together and interpreted where all provisions can be given meaning, if at all possible to do so. Article 19, Section 5 of the Arkansas Constitution provides:

"OFFICERS—HOLDING OVER— All officers shall continue in office after the expiration of their official terms until their successors are elected and qualified."

The Office of Sheriff of Garland County became vacant, not in 1973, but in 1972, when the incumbent sheriff, Bud Canada, resigned from office on December 29. William D. Pate, under the authority of Amendment

No. 29, was appointed on that same date by the Governor to fill the unexpired term. The Commission itself recites that Pate is appointed "for a term to expire 12/31/72." When Pate was appointed, he became the incumbent in the office of sheriff and when his term expired at midnight on December 31, he became a hold-over (I believe that all parties agree to this) and further action was therefore controlled by Article 19, Section 5, which, as previously quoted, provides that a hold-over continues in office until his successor is elected and qualified. Our opinions in *Justice* v. *Campbell,* 241 Ark. 802, 410 S.W.2d 601 and *McCoy* v. *Story,* 243 Ark. 1, 417 S.W. 2d 954 were founded and based upon Section 5 of Article 19. Both cases arose out of the same factual background.

We made it very clear in *Justice* that Amendment No. 29 did not apply. There, Arch Campbell was the incumbent judge, who did not seek re-election, and whose term in office would normally have expired on January 1, 1967. Tom Gulley was elected to the office at the General Election in November, 1966 for a two year term beginning January 1, 1967. Mr. Gulley died after the General Election but prior to the date he was to take office. Campbell then claimed the office by virtue of Article 19, Section 5. Robert O. Justice was appointed and commissioned by the Governor on January 1, 1967 (when Gulley would have taken office had he lived) and claimed the office on the basis of that appointment. After citing these facts, we then said:

> "Another provision of the Constitution - Amendment 29, Section 1 (1938) - is brought into the case by appellant. That section is as follows: 'Vacancies in the office of United States Senator and in all elective state, district, circuit, county, and township offices, except those of Lieutenant Governor, Member of the General Assembly, and Representative in the Congress of the United States, shall be filled by appointment by the Governor.'

> "We find no conflict in these Constitutional provisions. At first blush, the wording in Amendment 29, 'vacancies . . . shall be filled by . . . the Gover-

nor . . .,' would seem to sustain the position of Robert O. Justice. Any such impression has clearly been dispelled by the legal authorities immediately cited *infra*."

We then cited several cases in support of this last sentence, including *State* v. *Green and Rock,* 206 Ark. 361, 175 S.W. 2d 575, where, referring to Amendment No. 29, this court said:

"The words 'vacancies in the office of' as there used refer to offices which on account of death, resignation, removal or abandonment of the previous holder thereof, or for some other cause, *have in fact no incumbent.*" (My emphasis).

Further,

"An *incumbent* of an office is one who is in present possession of an office; one who is legally authorized to discharge the duties of that office."

Still further,

"Judge Campbell's position is correct, and in conformity with the provisions of the Constitution of Arkansas. It is not difficult to harmonize the two sections cited, and it is our duty to give effect to both provisions. Our holding is further strengthened by the rule in a majority of the jurisdictions. Quoting from 74 A. L. R. 486:

'II. Majority Rule. (a) Rule stated. In a majority of jurisdictions the rule obtains that the death or disability of an officer elect before qualifying does not create a vacancy in the office which may be filled by the appointing power, since he never occupied the office, and that under the provision that an incumbent shall hold his office until his successor is elected and qualified, the prior incumbent is entitled to continue in the office until the election and qualification of his successor.'

'Summarizing, when Amendment 29, Section 1, directs that certain enumerated vacancies shall be filled by appointment by the Governor, it means that when an office holder in present possession of an office and legally authorized to discharge the duties of that office, dies, resigns, is removed, or abandons the office, a vacancy is created."

Let us apply the language of the above opinion to the case at bar. Pate, though only serving a very short time as sheriff, was an incumbent hold-over sheriff on January 1, 1973 just as Arch Campbell was a hold-over judge on January 1, 1967. Garland County thus had an incumbent sheriff, William D. Pate, on January 1, 1973. Very clearly, *Justice* v. *Campbell, supra,* says that this situation is controlled by Article 19, Section 5, and, as shown, we specifically stated that it was not controlled by Amendment No 29.

*McCoy* v. *Story, supra,* arose because of the Governor calling a special election to elect a county judge for Pulaski County. It was argued that the wording of Section 5, without further implementation, permitted such an election to be called. That was the sole issue in the litigation, but we said that the language of Section 5 only indicated a principle; that implementary legislation was necessary before an election could be held. We commented:

"Amendment 29 to our Constitution provides for the filling of vacancies, but here, of course, all parties agree that no vacancy exists, [1] and appellant likewise agrees that there is no statutory provision for a special election under the circumstances here at issue."

I reiterate, that in the instant litigation, there is no vacancy, and there has been no vacancy since December 29, 1972, such vacancy occuring in a previous term, being filled during a preceding term, and that appointee holding over into the present term.

---

[1]Because Judge Campbell, as an incumbent, was holding over.

*Justice* v. *Campbell, supra* and *McCoy* v. *Story, supra,* were both unaminous opinions by this court, and in each case we certainly suggested, and almost invited, the General Assembly to pass legislation implementary of Article 19, providing for a special election where incumbent office holders held over into another term of office. In *Justice,* the opinion concluded with these three sentences:

> "We are further of the opinion that this Constitutional provision [Section 5 of Article 19] contemplates the filling of the new term by election. The phrase, 'until their successors are elected and qualified,' is susceptible to no other reasonable implication but that the office be filled by a vote of the people. There are numerous instances in which legislation is appropriately enacted to implement the requirements of the Constitution."

*McCoy* closes with the following paragraph:

> "*Justice* v. *Campbell, supra,* is here controlling. In that opinion, we stated that implementary legislation by the General Assembly was necessary; had we felt otherwise, we would simply have held that the Constitution directed that an election be held forthwith."

Undoubtedly, in compliance with our suggestions in those two cases, the General Assembly of 1969 passed Act No. 465, amending same in 1971 by Act No. 196. These acts are codified as Ark. Stat. § 3-106 (Supp. 1971) and provide:

> "Whenever a person shall have been elected at a General Election to fill any elective county office and the person so elected shall, subsequent to the date of the General Election and prior to January 1 of the year in which such person is to take office, die or withdraw in writing, a Special Election to choose a person to assume said office may be held if petitions therefor, filed by not less than fifteen per cent (15%) of the qualified electors of the county,

as determined by the total number of votes cast for all candidates for the Office of Governor in the next preceding General Election, shall be filed with the Governor within fifteen (15) days from the date of such death or written withdrawal from said office. Upon receipt of such petitions, the Governor shall call a special election to elect a person to fill such vacant county office."

The statute then provides that the incumbent holding such office (in this instance, Pate) shall serve until such time as the results of the special election are certified and the newly elected official takes the oath of office and qualifies.

In my view, this legislation was entirely valid, and it follows that I view the Governor's call for a special election in Garland County to be legal and proper.

The holding of the majority permits an appointee to hold the office to which he is appointed for more than one term, which, in my opinion, is entirely contrary to the desire and intent of both the people of this state and the General Assembly.

I would reverse the judgment of the Garland County Circuit Court.

BROWN and FOGLEMAN, JJ., join in this dissent.

JOHN A. FOGLEMAN, Justice, dissenting. I concur in all respects in the dissenting opinion of the Chief Justice. While I feel that his opinion fully covers the question involved, I am constrained to comment upon the use of Section 4 of Amendment 29 of the Arkansas Constitution by the majority as a stepping-stone toward its declaration that the act under which the Governor called the election was unconstitutional. I do not find any basis for holding Act 196 of 1971 [Ark. Stat. Ann. § 3-106 (Suppl. 1971)] unconstitutional and certainly none in Section 4, Amendment 29.

In considering the question of constitutionality, it must always be remembered that the General Assembly, as the supreme lawmaking body of our state, possesses

all legislative powers not expressly, or by necessary implication, prohibited by our constitution. *State* v. *Ashley,* 1 Ark. 513; *Straub* v. *Gordon,* 27 Ark. 625; *Vance* v. *Austell,* 45 Ark. 400; *Carson* v. *St. Francis Levee District,* 59 Ark. 513, 27 S.W. 590; *St. Louis, I. M. & S. Ry. Co.* v. *State,* 99 Ark. 1, 136 S.W. 938; *Butler* v. *Board of Directors of Fourche Drainage District,* 99 Ark. 100, 137 S.W. 251; *McClure* v. *Topf and Wright,* 112 Ark. 342, 166 S.W. 174; *Bush* v. *Martineau,* 174 Ark. 214, 295 S.W. 9; *Cook* v. *Walters Dry Goods Co.,* 212 Ark. 485, 206 S.W. 2d 742; *Gipson* v. *Ingram,* 215 Ark. 812, 223 S.W. 2d 595. Its power to legislate in fields not prohibited to it is absolute and any doubt about the constitutionality of an act passed by it must be resolved in favor of its validity. *Hooker* v. *Parkin,* 235 Ark. 218, 357 S.W. 2d 534. An act must be plainly at variance with the constitution before it is held unconstitutional by the courts. *McClure* v. *Topf and Wright,* supra; *Sallee* v. *Dalton,* 138 Ark. 549, 213 S.W. 762; *Dabbs* v. *State,* 39 Ark. 353, 43 Am. Rep. 275; *Eason* v. *State,* 11 Ark. 481; *State* v. *Ashley,* supra.

I submit that this act is not at variance with the Arkansas Constitution, but is wholly compatible with it, insofar as this case is concerned. Article 7, Section 46, provides that the qualified electors of a county shall elect a sheriff for a term of two years. General Elections are to be held biennially on a date fixed by the General Assembly. Article 3, Section 7. The constitution is presently totally silent on the subject of special elections. Yet we find many legislative provisions, in addition to Act 196 of 1971, touching upon special elections. The only suggested limitation on the legislative power in the matter of special elections is Amendment No. 29. The Governor is empowered by that amendment only to fill "vacancies in office." A "vacancy in office" under that amendment exists only when there is no incumbent, due to death, resignation, removal or abandonment of the previous holder, or some other cause. *State* v. *Green and Rock,* 206 Ark. 361, 175 S.W. 2d 575. A vacancy existed when Sheriff Canada resigned. The Governor was authorized to fill the vacancy, as he did, but only for the unexpired term ending December 31, 1972. Sections 1 and 4, Amendment 29. That limitation on the appointing power is express. It was regarded by the Governor in the commission issued.

A reading of Amendment 29 will show that it was the clear intention of the people to restrict the period of service of a gubernatorial appointee under this amendment so that he would not serve the full term of the office by appointment, whether it be 2, 4, 6 or 8 years.The provision "if such office would in regular course be filled at the next General Election if no vacancy had occurred" clearly relates to the filling of the *office* not the filling of the *vacancy*. The vacancy had nothing whatever to do with the time when the office would be filled. The office of sheriff of Garland County would have been filled at the next General Election even if the sheriff-elect had lived and taken office, or if .Sheriff Canada had not resigned. This amendment left the particular situation presented here open for legislative action, as there is no constitutional barrier whatever to the calling of a special election to prevent the full term of office being filled by a holdover or a gubernatorial appointee.[1] Even if Article 7, Section 50, is superseded, or if it had been expressly repealed, I would still maintain that this act of the legislature is not unconstitutional as applied to the facts in this case. The legislature, I repeat, did not have to search the constitution for authority to act in the premises. Those who challenge its action must search it to find a prohibition. I submit that the search was unsuccessful and its fruits inconsequential.

In *McCoy* v. *Storey*, 243 Ark. 1, 417 S.W. 2d 954, we said that we could not, by interpretation, write the words "at a special election" into Article 19, Section 5, to provide for a successor to a holdover, but, as so ably pointed out

---

[1]To this extent, I do not agree that it is *abundantly clear* that Amendment 29 completely eliminated and superseded Article 7, Section 50. (See Compiler's note Supp. 1971; *Laster* v. *Pruniski*, 228 Ark. 132, 306 S.W. 2d 123.) It is our duty to so harmonize the various provisions of, and amendments to, our constitution to give effect to all, if it is possible to do so. *Polk County* v. *Mena Star Co.*, 175 Ark. 76, 298 S.W. 1002; *State* v. *Donaghey*, 106 Ark. 56, 152 S.W. 746; *Ferrell* v. *Keel*, 105 Ark. 380, 151 S.W. 269. Repeal of constitutional provisions by implication is not favored, and the legal presumption is against such a repeal. *Faubus* v. *Miles*, 237 Ark. 957, 377 S.W. 2d 601; *Ferrell* v. *Keel*, supra. Before one constitutional provision can be said to be abrogated by another, there must be an irreconcilable conflict between the two. *Ferrell* v. *Keel*, supra. I do not find this conflict to exist, except as to some provisions of Article 7, Section 50, not material here. The two provisions can be read together so that Article 7, Section 50, is only partially superseded.

by the Chief Justice, we strongly implied that the General Assembly was not limited in its power to so provide. Perhaps the construction given our decision in *McCoy* by the majority is based upon its erroneous premise that in *McCoy* we were dealing with a vacancy in office. We specifically said that we were not. See also, *Justice* v. *Campbell*, 241 Ark. 802, 410 S.W. 2d 601. Still the majority says that "in *McCoy* we were considering whether Article 19, Section 5, was self-executing for the purpose of filling a vacancy in office by election and in *McCoy* v. *Story*, we were still dealing with the vacancy in the office * * *." Insofar as the period to be served by the Governor's appointee in this case is concerned, we are not, I reiterate, dealing with a vacancy in office, but with a holdover incumbent. In *McCoy* and *Justice*, we were not dealing with a vacancy in office, but with a holdover incumbent.

It also seems to me that in the attempt to utilize Section 4 of Amendment 29, the majority has been guilty of a glaring inconsistency. It contrues Section 1 as empowering the Governor to fill the vacancy in this case by appointment and then states: "The vacancy created by Senator Canada's resignation occurred more than four months before the next general election so section 4 of Amendment 29 requires that the vacancy be filled at the next general election." This inconsistency emphasizes the fallacy of the majority's premise that we are dealing with a vacancy, even after it seemed to be conceded by everyone that the vacancy had been filled and that the Governor's appointee was a holdover.

I further submit that the majority is not warranted in extracting two sentences of dictum from *Glover* v. *Henry*, 231 Ark. 111, 328 S.W. 2d 382, and reading them out of context in an effort to bolster its tenuous position. Even if these words were not dictum, and even if the context in which they were used did not serve to limit their effect, they do not say that the successors to the Governor's appointees may *only* be elected in a General Election, and certainly do not imply that this is the case where the term of the Governor's appointee has expired.

We said in *Justice* v. *Campbell*, 241 Ark. 802, 410 S.W. 2d

601, that we were of the opinion that Article 19, Section 5, contemplates the filling of the *new term,* where the incumbent is a holdover, by *election,* and that the words "until their successors are elected and qualified" are susceptible of no other reasonable implication but that the *office* be filled by a *vote* of the people. Nothing has persuaded me that these words were then inappropriate or that they are now inapplicable. We should adhere to them.

I am authorized to state that the Chief Justice and Mr. Justice Brown join in this dissent.