The Honorable Sharon Priest Secretary of State State Capitol Little Rock, Arkansas 72201-1094
Dear Ms. Priest:
This is in response to your request for an opinion on the following two questions:
 1. When will the judgeships created by the 80th General Assembly be subject to re-election?
 2. When will the judgeships of the judicial subdistricts created by the consent decree in Hunt, et al. v. Clinton, et al., PB-C-89-406, be subject to re-election?
With respect to your first question, the Eightieth General Assembly, by Acts 39, 41, and 170 of 1995,[1] created one new circuit-chancery judgeship in each of the Ninth Judicial District-West, the Thirteenth Judicial District, and the Twentieth Judicial District, respectively. Each act provides that the person initially appointed by the Governor will serve until December 31, 1996, or until a successor is elected and qualified, whichever occurs last. Act 39, § 2(c); Act 41, § 1(b); Act 170, § 1(b). Each act also provides:
 The qualified electors of the [applicable district] shall elect the additional circuit-chancery judge created herein at the November 1996 general election to take office on January 1, 1997. The additional judge shall be elected in the same manner . . . as provided by law for judges of the circuit-chancery courts. The judge shall serve for elected terms of four (4) years.
Act 39, § 2(d); Act 41, § 1(c); Act 170, § 1(c).
Each act further provides that it will become effective immediately upon passage and approval. Act 39, § 8; Act 41, § 7; Act 170, § 8. Acts 39 and 41 were approved by the Governor January 26, 1995; Act 170 was approved February 6, 1995.
Clearly, vacancies in these offices occurred immediately upon their creation. Howell v. Howell, 213 Ark. 298, 208 S.W.2d 22 (1948); State exrel. Wood v. Cotham, 116 Ark. 36, 172 S.W. 260 (1914); State ex rel.Smith v. Askew, 48 Ark. 82, 2 S.W. 349 (1886). Our constitution sets forth procedures for the filling of vacancies in certain offices:
 § 1. Vacancies in the office of United States Senator, and in all elective state, district, circuit, county, and township offices except those of Lieutenant Governor, Member of the General Assembly and Representative in the Congress of the United States, shall be filled by appointment of the Governor.
* * *
 § 4. The appointee shall serve during the entire unexpired term in the office in which the vacancy occurs if such office would in regular course be filled at the next General Election if no vacancy had occurred. If such office would not in regular course be filled at such next general election the vacancy shall be filled as follows: At the next General Election, if the vacancy occurs four months or more prior thereto, and at the second General Election after the vacancy occurs if the vacancy occurs less than four months before the next General Election after it occurs. The person so elected shall take office on the 1st day of January following his election.
Ark. Const. amend. 29, §§ 1, 4.
In my opinion, Amendment 29 is applicable to the judgeships at issue here and its procedures must be followed. See Op. Att'y Gen. 94-285, 90-010. To the extent, if any, the acts conflict with Amendment 29, the constitutional provision will control. See, e.g., Hawkins v. Stover,274 Ark. 125, 622 S.W.2d 667 (1981); McCraw v. Pate, 254 Ark. 357,494 S.W.2d 94 (1973).
I assume the vacancies were initially filled by appointment by the Governor, as required by both the acts and Amendment 29. The length of time to be served by the appointees is governed by Amendment 29, and depends upon whether the offices would, "in regular course," be filled at the general election next following the occurrence of the vacancies (i.e., the November 1996 general election).
Our constitution provides:
 The judges of the circuit court shall be elected by the qualified electors of the several circuits, and shall hold their offices for the term of four years.
Ark. Const. art. 7, § 17.
In State ex rel. Wood v. Cotham, 116 Ark. 36, 172 S.W. 260 (1914), the Supreme Court of Arkansas held that this provision requires that the terms of circuit judges expire on a regular cycle every four years, beginning in 1878, and that the term of a newly-created judgeship expire in the same year as those of previously-existing circuit judgeships. Under the holding of Wood, then, the initial term of a newly-created circuit judgeship must be shorter than four years to the extent necessary to make the regular terms of such judgeship expire in the same years as those of previously-existing circuit judgeships.
The terms of the state's circuit judges next expire at the end of 1998. If the judgeships at issue here are governed by Ark. Const. art. 7, §17, then, their initial terms must expire in 1998, the persons elected at the November 1996 general election will serve until December 31, 1998, and the persons to serve beginning January 1, 1999, will be elected at the November 1998 general election.
In my opinion, Ark. Const. art. 7, § 17, applies to circuit-chancery judges, including those holding the offices created by Acts 39, 41, and 170. That such persons exercise jurisdiction in equity does not change the fact that they also may exercise jurisdiction in law and sit as judge of the circuit court. See Act 39, § 2(b); Act 41, § 1(a); Act 170, § 1(a). See also Waddle v. Sargent, 313 Ark. 539, 855 S.W.2d 919 (1993) (applying Ark. Const. art. 7, § 13, and certain statutory provisions also governing circuit courts and judges, to a circuit-chancery judge sitting as circuit judge). Cf. Maples v. Road Improvement Dist. No. 2,137 Ark. 177, 208 S.W. 577 (1919) (refusing to apply Ark. Const. art. 7, § 18, containing a prohibition on dual office-holding by circuit judges, to a special circuit judge elected pursuant to Ark. Const. art. 7, § 21, primarily because the office of special judge is temporary). In my opinion, it follows, as stated above, that the initial terms of the judgeships at issue here expire in 1998, the persons elected at the November 1996 general election will serve until December 31, 1998, and the persons to serve beginning January 1, 1999, will be elected at the November 1998 general election.
To summarize, it is my opinion that it is necessary and appropriate, under Amendment 29 and the acts, to have votes of the electors of the districts at the November 1996 general election; that the persons then elected will, in accordance with Ark. Const. art. 7, § 17, serve until December 31, 1998; and that the persons elected at the November 1998 general election will serve the judgeships' first full four-year terms, commencing January 1, 1999.
With respect to your second question, it is my opinion that the circuit judgeships created by the consent decree in Hunt[2] are subject to re-election for full four-year terms at the November 1996 general election, and the chancery judgeships created thereby are subject to re-election for full six-year terms at the November 1998 general election.[3] The consent decree provides:
 The judicial positions elected from the majority African American sub-districts shall become available for election in time for the 1992 primary and general elections, with the successful candidates taking office on January 1, 1993. The circuit judges in these districts shall be elected for four year terms, and the chancery judges for six year terms.
Hunt v. State, No. PB-C-89-406, amended consent decree at 5-6 (E.D. Ark. Sept. 24, 1992).
Although the consent decree might be more clear in its terms, it appears to mean that the circuit judgeships addressed therein are for four-year terms and the chancery judgeships addressed therein are for six-year terms, both commencing January 1, 1993. Obviously, if such is the case with respect to the circuit judgeships, those offices will not be elected at the same general elections (the next being the one in 1998) as all other circuit judgeships. In this instance, however, the operation of Ark. Const. art. 7, § 17, is negated due to the effect of the supremacy clause of the Constitution of the United States, U.S. Const. art. VI, § 2. It is clear that an order of a federal court, such as the consent decree, and not just federal statutory law, "shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any state to the contrary notwithstanding." U.S. Const. art. VI, § 2. See, e.g., ReynoldsvilleCasket Co. v. Hyde, ___ U.S. ___, 115 S.Ct. 1745, 131 L.Ed.2d 820
(1995); Missouri v. Jenkins, 495 U.S. 33 (1990).
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General J. Madison Barker.
Sincerely,
WINSTON BRYANT Attorney General
WB:JMB/cyh
[1] It might be noted that other acts of the Eightieth General Assembly create or authorize to be created municipal court judgeships (see Acts 338, 823, 1015, and 1346 of 1995), purport to create a circuit-chancery judgeship on a prospective basis (see Act 900 of 1995), and add judges to the Court of Appeals (see Acts 11 and 15 of 1995 (1st Ex. Sess.)). You enclosed copies of Acts 39, 41, and 170 with your request, however, and I assume your first question was meant to refer only to the circuit-chancery judgeships created thereby. I do not address, therefore, the timing of elections to fill judgeships created or authorized to be created by other acts of the Eightieth General Assembly.
[2] None of the districts in which judgeships were created by Acts 39, 41, and 170 was involved in Hunt.
[3] The office of judge of the Chancery Court, Eighth Division, Sixth Judicial District, was excepted from the general rules set forth in the consent decree, and will next be subject to election for a full six-year term at the November 2000 general election. Hunt v. State, No. PB-C-89-406, amended consent decree at 6 (E.D. Ark. Sept. 24, 1992).