Mr. Sam Poskey, Chair Jackson County Election Commission Third and Main Streets Newport, AR 72112
Dear Mr. Poskey:
I am writing in response to your request for my opinion on the following question:
 Can a municipal judge, whose office was up for election in 1998 and who held over in that position since no other person ran for it, run in an election for that office in the year 2000 when the next year to run (after 1998) should be 2002, with no current vacancy existing?
You have indicated that the position at issue is that of Newport Municipal Court Judge.
RESPONSE
In my opinion, the answer to your question is "no."
Article XIX, § 5 of the Arkansas Constitution provides that "[a]ll officers shall continue in office until their successors are elected and qualified." It follows that the current municipal judge is properly serving as a de jure officer despite not having run in the last scheduled election. This situation is materially indistinguishable from one addressed in Ark. Op. Att'y Gen. No. 98-033, in which I addressed the status of three members of a local police pension board who had not stood for election as scheduled:
 The authorization to continue in office, provided by [article XIX, § 5] . . ., indicates that the three members in question are, in a sense, "legally" holding their board positions. This conclusion is bolstered by the fact that the Arkansas Supreme Court has held that "[w]here a legal incumbent of an office is authorized by law to hold over after expiration of the term until his successor is elected and qualified, the period of his holding over is as much a part of the term as the regular period fixed by law." Faulkner v. Woodard, 203 Ark. 254, 257, 156 S.W.2d 243 (1941), citing Wood v. Miller, 154 Ark. 318, 242 S.W. 573 (1922).[1]
In McCoy v. Story, 243 Ark. 1, 3, 417 S.W.2d 954 (1967), the Arkansas Supreme Court offered the following analysis of how article XIX, § 5 affects the timing of the next election:
 In Griffin v. Rhoton, 85 Ark. 89, 107 S.W. 380, quoting Judge Cooley, we stated:
 "* * * A Constitutional provision may be said to be self-executing if it supplies a sufficient rule by means of which the right given may be enjoyed and protected, or the duty imposed may be enforced; and it is not self-executing when it merely indicates principles, without laying down rules by means of which those principles may be given the force of law."
 It is at once apparent that the constitutional language here under discussion, to paraphrase Griffin, only indicates a principle, viz., that a successor should be elected, and it is equally clear that no rules are laid down concerning such election which can be given the force of law. In other words, no method or procedure is afforded by which the right to elect may be enjoyed. Mainly, there is no mention of when such an election should be held. . . .
Having concluded that the constitutional provision is not self-executing, the Court made clear that the issue of timing must be controlled exclusively by statute:
 Our early case of Merwin v. Fussell, 93 Ark. 336, 124 S.W. 1021, uses language which is entirely pertinent to the case at hand. There, quoting McCrary on Elections, we said:
 "`* * * it must be conceded by all that time and place are the substance of every election,' and that `it is, of course, essential to the validity of an election that it be held at the time and in the place provided by law.'"
It is further stated:
 "The authority to hold an election at one time will not warrant an election at another time, and an election held at a time not fixed by the law itself will be void."
 The matter is governed purely by statute, of course, because the system of elections followed in the United States was unknown to the common law.
 Article 19, Section 5, of our Constitution does not specifically order an election, nor does it fix any time for holding such an election, and this being true, the language of our court in Simpson v. Teftler, 176 Ark. 1093, 5 S.W.2d 350, is completely applicable: "The Legislature alone had authority to provide for an election, and any election held without authority is a nullity."
Id. at 5-6.
The term for municipal judges in Newport is dictated by A.C.A. § 16-17-207, which provides:
 The municipal courts in and for cities subject to this subchapter[2]
shall be held by one (1) municipal judge for each city, whose term of office shall be four (4) years and until his successor is elected and qualified as such.
In Justice v. Campbell, 241 Ark. 802, 805-07, 410 S.W.2d 601 (1967), the Supreme Court ruled that an elective office occupied by a holdover cannot be considered vacant, and that any election challenging the holdover pursuant to Ark. Const. art. XIX, § 5 must first be authorized by the legislature. In McCoy, the Supreme Court further held that unless the legislature orders a special election, an incumbent will hold over until the next scheduled general election. 243 Ark. at 5. However, unlike in the present case, the county judge's two-year term in McCoy was scheduled to expire at the next general election.[3] See also McCraw v. Pate,254 Ark. 357, 373, 494 S.W.2d 94 (1973) (holding that sheriff whose term of office was for two years could hold over until the next general election). The issue raised by your request, then, is whether the statute generally authorizing biennial elections might apply to support a midterm challenge to a holdover officer occupying a position whose term is set for four years.
The statute at issue, A.C.A. § 7-5-102, provides in pertinent part:
 On the Tuesday next after the first Monday in November in every even-numbered year, there shall be held an election in each precinct and ward in this state for the election of . . . Justices of the Supreme Court and Judges of the Court of Appeals, judges of the chancery and circuit courts, and elective officers whose office is created by the General Assembly, when the term of office of any judge or justice shall expire before the next general election.
(Emphasis added.) Municipal courts are beyond dispute "created by the General Assembly." A.C.A. § 16-17-204.[4] Moreover, it is likewise indisputable that a holdover officer's official term will have expired "before the next general election"; indeed, the official term will have expired as of the moment the officer began to hold over. McCraw,254 Ark. at 373 (approving holdover even though "there is no question that the official term of the office to which he was appointed expired two days after his appointment").[5] One might conceivably argue, then, that this statute authorizes a midterm election for municipal judge when the incumbent is a holdover.
However, I believe the interpretation just offered impermissibly strains the statutory language. In my opinion, the use of the future tense in the phrase "shall expire before the next general election" clearly indicates that the officer's term will not have expired at the time of the nearest general election. Stated differently, the statute simply provides that the election for any judicial office will occur at the general election that most closely predates the expiration of the incumbent's term. On its face, this provision cannot apply to the situation where a holdover already exists. In my opinion, then, Justice and McCoy dictate that absent a legislative directive to the contrary, a holdover cannot be challenged until the next general election in which an elected incumbent would stand for office.[6]
Before concluding, I should address one old, anomalous and frankly confusing case in which the Supreme Court appears to have sanctioned midterm challenges to a holdover officer. In Weas v. Montgomery,180 Ark. 989, 23 S.W.2d 969 (1930), the Court was confronted with the question of who currently occupied the position of North Little Rock municipal judge. Weas won the position in 1923, wrongly believing that a recent statute raising the term from two to four years was in effect at the time of the election. Id. at 990-91. For unexplained reasons, he ran for reelection in 1926, garnering a majority of the votes. He again ran successfully in the 1927 general election. Id. at 990. However, Montgomery ran for and won the position in 1929, prompting Weas to protest that this election was a nullity because his own term would not expire until 1931 — four years after the 1927 election. Id. The Supreme Court held that Weas had begun a four-year holdover term when he failed to run for reelection at the end of his two-year term in 1925, which made it appropriate for Montgomery to challenge in 1929:
 As the four-year term began in 1925, the election of April, 1929, was the proper time to elect the appellant's successor in office, and the appellee, having received a majority of the votes cast at that election, is now the legally elected judge of the municipal court.
Id. at 994.
The passage just recited is in all respects consistent with my conclusion above — namely, that a holdover officer will serve a complete term unless the legislature implements some means to cut it short, in which case a successor would complete the balance of the term. However, the Court's analysis immediately preceding the passage just quoted is troubling:
 [I]n 1925, appellant's two-year term having expired, if the new four-year term began, whether the election of 1926 be treated as a special election to fill a vacancy or whether the 1927 election was such, the practical result is the same, for, no matter how he was holding, he was, and could, only have been holding for the four-year term beginning with the April election, 1925.
Id. This dictum suggests that the two referenced elections were something other than nullities, and that Weas's election in one or the other filled a "vacancy" and so rendered him something other than a holdover.[7]
However, as Justice clearly states, there is no "vacancy" created when an officer holds over. 241 Ark. at 807. Accordingly, I can only conclude that the subsequent case law discussed above has overruled any suggestion in Weas that, without express legislative authorization, a holdover can be challenged either by special election or by mid-term general election.
Finally, I will note that I find nothing unjust in permitting this incumbent municipal judge to hold over for a full term. Any candidate who chose to could have challenged the incumbent in 1998. Apparently no one cared to run, and it is certainly understandable, if perhaps not ideal, that the unchallenged incumbent forewent the formality of placing his name on the ballot. Under these circumstances, I see nothing unfair in requiring any would-be challenger to await the 2002 completion of the current term before running. Conversely, the incumbent should also await 2002 before seeking reelection. In my opinion, the results of any election for his office in 2000 would be a nullity.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP/JHD:cyh
[1] In some jurisdictions, the absence of a constitutional or statutory holdover provision is deemed to render the holdover officer de facto, rather than de jure. See, e.g., Grooms v. LaVale Soning Board,340 A.2d 385 (Md.App. 1975).
[2] This subchapter applies to cities having a population of 2,400 or more. Newport has a population exceeding 7,000.
[3] The holding of general elections is mandated by Ark. Const. art. III, § 8, which provides: "The general elections shall be held biennially, on the first Monday of September, but the General Assembly may by law fix a different time."
[4] The legislature was itself authorized to create municipal courts by Ark. Const. art. VII, § 43 and amend. LXIV.
[5] In Faulkner v. Woodard, 203 Ark. 254, 257, 156 S.W.2d 243 (1941), the Supreme Court offered the following analysis of Article XIX, § 5:
 Since appellant's election was void and of no effect, as we have indicated, it seems clear under the above plain provision of the constitution that appellant continues in the office of justice of the peace to which he was elected in 1938 until a successor to him qualifies.
 In Wood v. Miller, 154 Ark. 318, 242 S.W. 573, this Court said: "Where the legal incumbent of the office is authorized to hold over after the expiration of his term until his successor is elected and qualified, the period of his holding over is as much a part of his term as the regular period fixed by law.
(Emphasis added.) Although there is a logical tension in the idea that a term can be both expired and extended by holding over, the Court nevertheless subscribes to this proposition as serving the widely recognized public interest in insuring that government services continue uninterrupted. See, e.g., Opinion of the Justices, 672 A.2d 4 (Del. 1995) (constitutional holding-over provision serves to prevent vacancy or interregnum in public office so that public business will not be subjected to doubt or dispute); Janof v. Koch, 413 N.Y.S.2d 404
(N.Y.A.D. 1979) (holding over after expiration of term warranted to prevent lapse in or disruption of essential government services); Opinionof the Justices, 298 A.2d 118 (N.H. 1972) (holdover provision designed to prevent hiatus in functioning of office and not to postpone beginning of next statutory term of office); State ex rel. Warder v. Gainer,167 S.E.2d 290 (1969) (the law abhors vacancies in public office).
[6] This conclusion follows from the fact that the General Assembly has not enacted legislation to enable midterm challenges to holdover officers, as the Justice Court indicated would be required since Article XIX, § 5 is not self-executing. 241 Ark. at 808. Given that legislative action or continued inaction will be dispositive one way or the other on this question, I see little point in dwelling on the public policy arguments favoring and disfavoring midterm challenges to holdovers. I will note, however, that in other jurisdictions, courts have generally found that holding over is merely a defeasible extension of tenure, not an action that accords the incumbent a new fixed term. See, e.g.,Westphal v. City of Council Bluffs, 275 N.W.2d 439 (Iowa 1979) (tenure of holdover officer not necessarily equal to term of regularly appointed officer); Kelly v. Kelly, 292 N.W. 479 (Mich. 1940) (holding over is authorized merely for convenience to avoid vacancy and confers no right for any defined period); State ex. rel. Fares v. Karger, 77 N.E.2d 746
(Ind. 1948) (additional holdover term only contingent and defeasible);cf. Bechtel v. Farquhar, 21 Pa. C.C. 580 (Pa. 1899) (incumbent may hold over until next general election). Arkansas law is essentially in accord with this general rule, since it acknowledges that the General Assembly, in order to implement Article XIX, § 5, could enact legislation to enable a holdover's midterm replacement. McCoy, 243 Ark. at 5. However, until the legislature enacts legislation authorizing midterm challenges, the practical effect of holding over will be to embark on a full new term.
[7] Weas predates the adoption in 1938 of Ark. Const. amend. XXIX, which dictates that the governor fill "vacancies" by appointment.